## 19566

W. E. WITHERSPOON et al., Appellants, v. GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Respondents.

(194 S. E. (2d) 399)

118

*E. N. Zeigler, Esq.,* of Florence, *for Appellants,* ▮▮

*Messrs. Julius W. McKay,* of Columbia, and *Wright, Scott, Blackwell & Powers,* and *Willcox, Hardee, Palmer & O'Farrell, McLeod & Buyck,* of Florence, and *John W. Weldon, Edward A. Charron,* of Jacksonville, Florida, and *Ross & Kraushaar,* of Cleveland, Ohio, *for Respondents,*

*E. N. Zeigler,* of Florence, *for Appellants, in Reply.*

February 8, 1973.

LITTLEJOHN, Justice:

This action finds origination in discontent with the method used to consolidate seniority rosters upon merger of the Atlantic Coast Line Railroad (ACL) and the Seaboard Airline Railroad (SAL) into one railroad, known as the Seaboard Coast Line Railroad. We are called upon to determine if the defendant Grand International Brotherhood of Locomotive Engineers (BLE) and defendant Seaboard Coast Line Railroad (Seaboard) used an arbitrary and discriminatory method of determining plaintiffs' positions on the consolidated seniority roster; and, secondly, we are called upon to determine if the BLE breached its contractual obligation to the plaintiffs.

The plaintiffs, and the class they represent, have been employees of Seaboard since July 1, 1967, in the craft of locomotive engineers, for which the BLE is the certified collective bargaining representative. Prior to that time, they were employed on the former ACL Florence Seniority District, which was consolidated with the former ACL Waycross-Savannah Side and SAL Carolina Seniority Districts, to form Seaboard's Consolidated Seniority District No. 2 (Eastern). This consolidated district, which is the subject of this action, covers portions of the State of South Carolina and Georgia, and extends into the States of North Carolina and Florida. Plaintiffs sought a decree holding for naught a bargaining agreement between BLE and Seaboard, which provided for the consolidation of the engi-

neers' seniority rosters in that merged district, as well as the five other newly created districts on the merged railroad, by the dovetail percentage blocking method.

It is the basic contention of plaintiffs that there was no rational basis for adopting the dovetail percentage blocking method, and that the only fair method to consolidate seniority rosters would be by strict date of hire. Plaintiffs also assert the inequity created was intentional and specifically directed against them.

The defendant Seaboard is a corporation engaged in interstate commerce as a railroad carrier as defined in Section 1, Railroad Labor Act, 45 U. S. C. § 151, and § 1 of the Interstate Commerce Act, 49 U. S. C. § 1, and is subject to the provisions of said Acts. Seaboard is licensed to do business and is doing business within South Carolina.

The defendant BLE is a labor organization under the Railway Labor Act and Interstate Commerce Act, and engages in collective bargaining in the railroad industry. The BLE is the duly authorized exclusive collective bargaining representative under the Railroad Labor Act for the craft or class of engineers in the employment of Seaboard.

On July 1, 1967, pursuant to the regulations and orders of the Interstate Commerce Commission, the ACL and the SAL merged to form the defendant Seaboard. The employee protective conditions imposed by the Commission, and approved by the court, provided for implementing agreements between the Seaboard and the respective employee representatives, including BLE, as to the consolidation of work facilities and employment forces of the predecessor companies. On November 10, 1966, pursuant to the Railroad Labor Act and § 5(2)(f) of the Interstate Commerce Act, the BLE and the aforesaid predecessor companies of Seaboard entered into an agreement entitled "Agreement for Protection of Employees Represented by the Brotherhood of Locomotive Engineers in the Event of Merger of Seaboard and Coast Line Railroads." The agreement provided,

*inter alia,* for guaranteed earnings in employment for the existing employees of the predecessor companies. In consideration of these benefits and in line with the commission-imposed conditions, Section 3 thereof provided for subsequent consolidation of seniority districts and seniority rosters.

On June 28, 1967 (two days before effective date of merger), agreements providing for the consolidation of seniority districts of the predecessor companies were entered into by BLE and said companies. These were entitled "Implementing Agreements Nos. 1, 2, 3, 4, 5 & 6." Implementing Agreement No. 2 related to Consolidated Seniority District No. 2, also known as Eastern District, which district is the subject of this suit. In Article 1, Section 2 of each of said agreements, provision was made for the consolidation of seniority rosters to be implemented in a further agreement, such implementation to be based upon each former district's equity and other related factors.

On December 19, 1967, the BLE and Seaboard entered into an agreement entitled "Implementation of Article 1, Section 2, District Agreements 1 Through 6, Signed June 28, 1967," which provided for the consolidation of seniority rosters of locomotive engineers pursuant to agreed formulas contained therein. By its terms, said agreement was to become effective January 16, 1968. Through a series of legal maneuvers, the application of this agreement was delayed. In March of 1968, this Court took up the matter of a temporary injunction issued by Associate Justice Lewis, resulting in an order dated March 11, 1968, dismissing the injunction previously issued.

Prior to the merger of the SAL and ACL to form defendant Seaboard, there were two separate seniority rosters on the SAL, one for road engineers and one for yard engineers. Since 1941 or before, employees of SAL, who subsequently became locomotive engineers, were hired first as locomotive firemen for either yard service or for road service. The individual had no right of selection to road or yard service.

On the ACL, however (excepting the former Brunswick and Birmingham Seniority Districts), there was only one seniority roster and engineers were qualified for both road and yard seniority and upon promotion from the craft of firemen, were positioned on seniority rosters for the craft of locomotive engineers in each former seniority district.

In order to consolidate the two SAL rosters and the one ACL roster in the Eastern District here involved, the aforesaid agreement of December 19, 1967, first provided for the consolidation of the separate road and yard engineer seniority rosters on the SAL, using the individual's date-of-hire as a fireman except where said date would permit the individual to run around an engineer having a higher existing rank on the engineers seniority roster.

Next, in order to consolidate the rosters of SAL and ACL engineers, the agreement of December 19, 1967, established the specific elements to be considered. These elements were: (1) Job starts with all engineers within each former seniority district. (2) Miles paid for, including engineer hours of all engineers, within each former seniority district. (3) Earnings of all engineers within each seniority district. (4) Number of men on January 1, 1966 and July 1, 1966 seniority rosters of each former district. This is known as the dovetail percentage blocking method. It was selected by the local chairmen of the General Committee of Adjustment of BLE for the ACL and SAL after jointly held sessions in Jacksonville, Florida.

As to each former seniority district, its equity in the work of the new consolidated seniority district was determined on the basis of its precentage of the total work performed in the former districts, as established by consideration of the four elements enumerated above. Section 35 of the standing rules of the BLE Constitution, which sets forth the procedures governing the handling of merger-related problems, including seniority, contemplates elements other than date of hire in determining the method and proper

ratio for consolidating seniority rosters on an equitable basis in the event of merger.

After determining the percentage equities to be Florence 42.231%, Waycross-Savannah Side 21.459%, and Carolina 36.310%, the agreement of December 19, 1967, provided for the dovetail percentage blocking of the former seniority rosters into one consolidated seniority roster for each of the six newly-created seniority districts, including Consolidated Seniority District No. 2 (Eastern). The former rosters were consolidated as prescribed in said agreement. In transferring the names from the former seniority rosters of engineers to the consolidated rosters in each of the six consolidated districts, each individual was inserted thereon in accordance with the positions delegated to his former district on the basis of its equity. As between the engineers as a group on the former district, each individual was placed thereon in relation to his relative position to the other engineers in the former district; that is, the individual's date-of-hire as a fireman was used except where said date would permit the individual to run around an engineer having a higher existing rank on the engineers' seniority roster for his former district. In applying the dovetail percentage blocking formula, the date-of-hire as firemen was not controlling as to the position of individuals from different seniority districts on the consolidated roster.

During January and February of 1968, a group of BLE members attempted an appeal to the Chairman of the General Committee of Adjustment, from the actions of the BLE and Seaboard in adopting the consolidation method used. This attempted appeal was made under Section 42 of the BLE Statutes. The Grand Chief Engineer in a letter informed the appealing members, "that Section 35(d) Standing Rules [of BLE] pre-empts any provision for appeal, when the purpose of the appeal is to reverse conditions which have been agreed upon and placed into effect by the General Committees involved in a merger through an application of Section 35(a)-(c) Standing Rules [of BLE] and such an appeal will not be entertained."

The trial judge found (1) that the defendants acted in a fair and reasonable manner and did not act arbitrarily or with discrimination; (2) that the defendant BLE acted in conformity with the Constitution and By Laws of the Grand International Brotherhood of Locomotive Engineers (1966).

The plaintiffs take exception to each of these two rulings.

This action is in equity and comes to this Court with only the circuit court's findings of fact and conclusions of law. Therefore, this Court will determine the facts in accordance with our own views of the preponderance or greater weight of the evidence. *Moorhead v. Scott*, S. C., 193 S. E. (2d) 510 (filed December 13, 1972).

We recognize our jurisdiction of the cause of action and exceptions arising therefrom based on the claim of a breach of the BLE's duty of fair representation, in the negotiation and application of the collective bargaining agreements with Seaboard; and we further recognize that federal labor law must be applied even though the state courts have concurrent jurisdiction. *Amalgamated Ass'n of St., E. R. & M. C. Emp. v. Lockridge*, 403 U. S. 274, 91 S. Ct. 1909, 29 L. Ed. (2d) 473 (1971); *Vaca v. Sipes*, 386 U. S. 171, 87 S. Ct. 903, 17 L. Ed. (2d) 842 (1967).

The plaintiffs argue that it was arbitrary and discriminatory for the BLE and Seaboard to use the dovetail percentage blocking method described hereinabove, instead of a date-of-hire method. It would serve no useful purpose to make a comparison based on the record of the two methods. It is sufficient to state that it is apparent from the record that the plaintiffs, excepting one, were not put on the consolidated seniority roster in as advantageous a position by the dovetail percentage blocking method as they would have been by a date-of-hire method.

The federal cases, by which we are bound, set out the duty which a labor union owes its members. It is readily

recognized that in the negotiation and administration of collective bargaining agreement, conflicts between employees represented by the same union is a recurring fact, and agreements reached will not be to the complete satisfaction of all who are represented. *Ford Motor Co. v. Huffman,* 345 U. S. 330, 73 S. Ct. 681, 97 L. Ed. 1048 (1953); *Humphrey v. Moore,* 375 U. S. 335, 84 S. Ct. 363, 11 L. Ed. (2d) 370 (1964).

In *Huffman,* the Court stated:

"A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose."

In *Vaca,* the Court wrote:

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith."

The basic issue in every fair-representation case is to determine whether the specific factual situation shows hostile discrimination based on irrelevant and invidious considerations, or falls within the wide range of reasonableness granted bargaining agents. *Steele v. Louisville & N. R. R.,* 323 U. S. 192, 65 S. Ct. 226, 89 L. Ed. 173 (1944); *Fort Motor Co. v. Huffman, supra.*

In representing the engineers, BLE was concerned with the seniority status of some 2600 men formerly employed by the two railroads in all of the seniority districts. Approximately 160 of these were empoyed by ACL in the Florence District. Accordingly, it is seen that the persons involved in this litigation constitute a very small percentage of those whose interest BLE was obligated to advance and protect.

The record fairly indicates that the BLE and Seaboard entered into the agreements with the good faith and honest belief that, considering all members

dovetail percentage blocking was the most equitable method to consolidate seniority rosters; and that the dovetail percentage blocking method was one of a number of fair and reasonable methods available.

The plaintiffs have failed to carry the burden of proof; they have shown only that they are a dissident group of employees after the merger of the two railroads. They have failed to show that the negotations and application of the agreements were anything but reasonable.

The lower court held that BLE acted " . . . under and in conformity with the Brotherhood's Constitution." The plaintiffs contend that the lower court erred and should have held, first, that BLE acted in violation of the constitution and by-laws and, secondly, that by reason thereof, the consolidated roster used in the collective bargaining agreement of BLE with Seaboard was null and void.

When one becomes a member of a labor union, a contractual relationship comes into being between the member and the union. The contract is established by the terms of the constitution and by-laws of the union. *International Ass'n of Machinists v. Gonzales,* 356 U. S. 617, 78 S. Ct. 923, 2 L. Ed. (2d) 1018 (1958).

Even if it should be held that BLE breached its contractual duty to the plaintiffs, they would not be entitled to the relief sought in this action. In the prayer for relief, plaintiffs asked for:

" . . . [A] temporary and a permanent injunction against the defendant from putting into effect a seniority roster . . ." And have asked:

"That an order issue out of this Court declaring the said consolidated roster . . . null and void. . . ."

A breach of contract between the plaintiffs and BLE would not nullify the collective bargaining agreement under the facts of this case. BLE was the bargain-

ing agent for the plaintiffs. Seaboard had the right, if not the duty, to bargain with BLE. If BLE did not comply with its own constitution and by-laws, the record shows that Seaboard did not encourage or participate in such alleged failure on the part of BLE. Accordingly, the collective bargaining agreement bteween BLE and Seaboard is binding and the lower court correctly held that the same was not null and void and that the plaintiffs were not entitled to the relief which they have sought in this action. *In Re Soto, 7* A.D. (2d) 1, 180 N.Y.S. (2d) 388 (1958) ; 7 N.Y. (2d) 397, 198 N.Y.S. (2d) 282, 165 N. E. (2d) 855 (1960).

In addition to the two questions treated hereinabove, two others were submitted in the appellant's brief. It was first contended that Seaboard was not a necessary party to this action. In oral argument, counsel abandons that contention. It is also submitted that the lower court should have temporarily enjoined the defendants from placing the consolidated seniority roster in effect, pending the outcome of the trial on its merits. Having concluded that no injunction was appropriate, it necessarily follows that denial of the temporary injunction was correct.

We find the exceptions without merit and the order of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ,. concur.