Roger BRADFORD, Appellee,

v.

TEXTILE WORKERS OF AMERICA,
AFL–CIO, LOCAL 1093, Appellant.

No. 76–1921.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1977.

Decided Oct. 14, 1977.

Jonathan R. Harkavy, Greensboro, N. C. (Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., on brief), for appellant.

Louis L. Lesesne, Jr., Charlotte, N. C. (Chambers, Stein, Ferguson & Becton, Charlotte, N. C., on brief), for appellee.

Before CLARK, Supreme Court Justice,* RUSSELL, Circuit Judge, and HEMP-HILL,** District Judge.

DONALD RUSSELL, Circuit Judge:

This is an action to recover damages for a violation by the defendant Union Local of the plaintiff's rights under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411, *et seq.* Plaintiff recovered a jury verdict and the defendant Local has appealed. We affirm.

The plaintiff was a member of the defendant Local and an elected union committeeman.[1] The Local Union had five committeemen, who occupied a position in the union hierarchy between the shop steward and the Executive Committee. Each committeeman had responsibility for handling any complaints on behalf of the employees in a particular department of the plant in connection with any labor-management matter.

In April, 1975, a member of the Local filed charges against the plaintiff for alleged misconduct as a union committeeman. A date for hearing on such charges was fixed. The plaintiff claimed he received neither notice of the charges nor of the hearing. Because of the alleged lack of proper notice he failed to attend the hearing. Despite the lack of notice, the Executive Board proceeded with the hearing on April 17, 1975. At the hearing, the Executive Board of the defendant Union found from the evidence offered that the charges against the plaintiff were without merit. At the same time, however, the Board de-

---

* Sitting by designation. Justice Clark died before the opinion was prepared.

** United States District Judge for the District of South Carolina, sitting by designation.

1. Plaintiff had been twice elected by members of the defendant to the position of textile committeeman. His first election was to a one-year term in December 1973. In December he was elected to a full two-year term.

cided, without notice, to suspend the plaintiff from his elective position of committeeman for the balance of his term. From this latter action of the Executive Board, taken without the filing of charges and without notice to the plaintiff, the plaintiff filed an administrative appeal as authorized under the International Constitution and By-Laws of the Union. A hearing on such appeal was had on June 24, 1975, before a hearing officer appointed by the International Union as required under the International Constitution and By-Laws in the case of an appeal. On July 25, 1975, the hearing officer filed his report recommending the reinstatement of the plaintiff as committeeman. Reinstatement seems to have followed sometime later. In the meantime, however, on July 8, 1975, the plaintiff had filed this action. As originally declared, it presented only an action under the Act. By amendment, after the decision of the hearing officer the plaintiff added a second count under State law to his complaint.[2]

At trial, both the plaintiff and the defendant offered evidence. At the conclusion of the evidence, the district judge directed a verdict for plaintiff on the common law claim and directed a verdict in favor of the defendant on the procedural part of plaintiff's LMRDA claims under § 101(a)(5). The remaining issues were then submitted to the jury, which returned a verdict in favor of the plaintiff. It is from the judgment entered on that verdict from which this appeal is prosecuted.

■ The defendant asserts as its first ground of appeal that, before filing his action, the plaintiff was required under the Act to exhaust his administrative remedies and that he failed to do so. 29 U.S.C. § 411(a)(4). The plaintiff does not dispute that exhaustion of administrative remedies is generally a prerequisite to a right to sue under the Act. He urges, however, that

administrative exhaustion is not an inflexible requirement but one subject to many recognized exceptions. He contends he met at least three exceptions, any one of which would be sufficient to excuse him from the exhaustion requirement under the Act. In the first place, he claimed that his suspension from office without notice, either of the charges or of hearing, was violative of his rights both under the Act and under the Constitution and By-Laws of the Union itself. Since the defendant Union concedes the invalidity of plaintiff's suspension on the latter ground, as admitted by the defendant at trial and as found by the hearing officer, the principle stated in *Simmons v. Avisco, Local 713, Textile Workers Union* (4th Cir. 1965), 350 F.2d 1012, 1016–7, would excuse exhaustion, he submits.[3] Another ground for excuse arises where the charge represents a violation of the right of free speech granted under § 411(a)(2), 29 U.S.C. of the Act. *Keeffe Brothers/John H. Johnson v. Teamsters Local Union No. 592* (4th Cir. 1977), 562 F.2d 298. The plaintiff declares that his action rests basically on the claim that his suspension was in retaliation for the exercise by him of his free speech rights, and this was the construction placed by the District Court on his action. He urges, therefore, that his action falls within this second exception to the exhaustion rule. Finally, he asserts that he had amended his complaint after the hearing officer entered his decision, and that whether he had exhausted his administrative remedies was to be determined by whether they had been exhausted at the time his amended complaint was filed, and not at the time his original complaint was filed, and that, so measured, his action was not commenced until after there had been an exhaustion of administrative remedies. Moreover, he takes the position that the hearing officer sustained the appeal solely on the ground that the notice of charges and of hearing

---

**2.** *Witherspoon v. G.I.B.L.E.* (1973), 260 S.C. 117, 194 S.E.2d 399.

**3.** *Wiglesworth v. Teamsters Local Union No. 592* (4th Cir. 1976), 552 F.2d 1027, the plaintiff argues, is not in point. That decision turned on the facts that a violation of the plaintiff's rights

"were neither conceded nor easily determinable." 552 F.2d at p. 1030. In this case, the plaintiff points out that the clear violation of plaintiff's rights is frankly conceded by the defendant.

required under the International Constitution and By-Laws had not been given, thus implicitly holding that the plaintiff's claim of a violation of his right of free speech under the Act was without merit, and leaving him only with a legal remedy to redress his free speech rights. It is only necessary to consider the second and third grounds since it was on his free speech claim alone that the District Judge submitted the cause to the jury and on which he based his ruling that exhaustion was excused.[4] We conclude that the decision of the District Judge excusing exhaustion was, in the light of the evidence we later discuss, not in error.[5]

Even if it be found that the plaintiff had satisfied the exhaustion requirement, the defendant posits that the Act gave the plaintiff no right of action whatsoever for removal from office as an officer of a union, even though he was an elected and not an appointed officer, and that this action should accordingly be dismissed. Later, however, in its brief it seems to concede that removal from office, if because of "intra-union political activity" or for something the officer had said or done "as a member," would be covered by the Act's prohibition and would be redressable thereunder. So far as it asserts an absolute denial of any right of action by a union member for removal or suspension from a union office, the defendant relies on a line of cases from the Third Circuit, beginning with *Sheridan v. United Brotherhood of Carpenters, etc.* (3d Cir. 1962), 306 F.2d 152, in which Judge Kalodner, speaking only for himself, declared that the term "discipline" in § 609 (§ 529, 29 U.S.C.) does not encompass removal from union office, and that the LMRDA protects "the union-member relationship, not the union officer or union-employee relationship."[6] The majority

4. The district court ruled that the requirements of § 411(a)(5) did not confer any due process rights on a union officer in his status as a union officer. This is the rule announced in a number of authorities. *See Gabauer v. Woodcock* (8th Cir. 1975), 520 F.2d 1084, 1093, *cert. denied*, 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653 (1976). Under that ruling the plaintiff was without a right of action under the Act for failure to afford him proper notice either of charges or hearing on his removal from union office.

5. In the recent case of *Keeffe Brothers/John H. Johnson v. Teamsters Local Union No. 592, supra,* slip op., p. 13, we held that the determination whether there had been exhaustion or that exhaustion was excused was an issue for the Court.

6. *Id.* at 157.
 *Sheridan* in holding that "discipline" within § 609 did not cover removal from union office, represented only the opinion of Judge Kalodner. Judge Hastie expressly rested his decision on "a reason different from those stated by Judge Kalodner," 306 F.2d at 159, and Judge McLaughlin, the third member of the panel, vigorously dissented from both Judge Kalodner's conclusions and Judge Hastie's, 306 F.2d at 161. Judge McLaughlin summarized his conclusion sustaining a right of action under the Act for removal from union office in that case, said (306 F.2d at 165):
 "* * * The form of sanction [i. e., removal from union office] does not change the fact that they were disciplining him because, as a member of the union, he was exercising a right protected by the LMRDA."

However, the same Circuit, in a later case, has adopted Judge Kalodner's view. *Martire v. Laborers' Local Union 1058* (3d Cir. 1969), 410 F.2d 32, 36, *cert. denied*, 396 U.S. 903, 90 S.Ct. 216, 34 L.Ed.2d 179 (1969). *See, also, Collins v. Pennsylvania Tel. Union, Local No. 1944* (W.D.Pa.1976), 418 F.Supp. 50.
 *Wambles v. International Bro. of Teamsters, Chauffeurs,* (5th Cir. 1974), 488 F.2d 888, seems to support to some extent the rule in *Sheridan.* However, that case appears to have turned on the fact that the plaintiff was an appointed, not an elected, officer serving "at the pleasure of the president" of the union. The basis of the Court's reasoning was stated in the opinion of the District Court, adopted on appeal, thus (488 F.2d at 889–890):
 "* * * .* To tie the President's hands, an elected official, by not allowing him to discharge without cause or for any reason those who must serve under him, would so restrict the elected officers in the discharge of their duties that elections could be meaningless. An *appointed* official should carry out the approved policies of the Union. His convictions and loyalties should be to the Union and not a personal fiefdom beyond the reach of the membership, here expressed by the appointive powers of its elected officers. * *

 "* * * it appears to me to go beyond the intent of the Act to freeze them [an *appointed* official] in a job in which they serve not for a term, but at the pleasure of an elected official with appointive powers set out in the Unions' Constitutions." (Italics added)

view, however, is definitely to the contrary. *See Wood v. Dennis* (7th Cir. 1973), 489 F.2d 849, 853, *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974) in which the decisions of the various circuits are cited and reviewed, as well as *Cooke v. Orange Belt Dist. Council of Painters* (9th Cir. 1976), 529 F.2d 815.

We find the reasoning of the majority compelling. As the Court in *Miller v. Holden, supra*, 535 F.2d at pp. 916–917, so cogently stated it, a union member, by accepting an elective office in the union, does not forfeit his rights expressly given him as a union member under the Act and is entitled to be protected from "discipline," as that term is used in § 609 of the Act, in connection with his union office. It must be conceded that one of the specifically protected rights under the Act is that of free-speech which encompasses what *Cooke* calls "intra-union political activity." And, contrary to the defendant's argument, the term "otherwise discipline" in § 609 [29 U.S.C. § 529] is not to be given a "crabbed" construction which would excise from its meaning removal from an elected union office by the local in retaliation for the exercise of the statutorily protected free speech right. The very phraseology of the term itself, *"otherwise discipline,"* [7] manifests the legislative purpose to give a broad and liberal construction to the term, and one which certainly would comprehend anything in the nature of retaliation for the exercise of the statutorily protected right of free speech in "intra-union political" affairs. *Morrissey v. National Maritime Union* (2d Cir. 1976), 544 F.2d 19 at 26. This would obviously reach removal from office of an elected union official under such circumstance. And this is the view taken in a majority of the circuits [8] and has the approval of the commentators.[9] We accept that view of § 609. It follows that removal from union office for an exercise of free speech by a union member is "discipline" which is proscribed by § 609 of the Act and for which relief is provided under § 412, 29 U.S.C.

It is the defendant's position, however, that the record shows conclusively that the cause of plaintiff's removal from office was, not in retaliation for the exercise of any right of free speech, but because of his non-attendance at the meeting of the Executive Board on April 17, 1975. The defendant's witnesses testified, it is true, that the plaintiff's removal from office was based on his non-attendance of the Executive Board meeting called on April 17, 1975, to hear the complaint filed against the plaintiff. Doubt, though, is cast over this claim of the defendant by the undisputed fact that removal of the plaintiff from office because of his non-attendance at the meeting of April 17, 1975, was invalid under the International Constitution and By-Laws. And it would seem implausible to assume that the defendant's Executive Board did not know this from the outset, especially since the plaintiff had called the invalidity of the meeting to the attention of the president of the Local before the hearing began. To accept the argument of the defendant would require a conclusion that

*Wambles*, however, must be read in the light of the ruling in the subsequent case from the same circuit of *Miller v. Holden* (5th Cir. 1976), 535 F.2d 912 at 917. There, the Court said: "* * * Indeed, if *Sewell's* [*Sewell v. Grand Lodge of Int. Ass'n of Machinists*, 445 F.2d 545 (5th Cir.)] recognition that a member retains his statutory rights despite his dual capacity as a member and a union official or employee is to have meaning, § 412 must provide a remedy for retaliation against a member's exercise of free speech even if he is not punished in his capacity as a member." This latter view does not differ substantially from the view in *Wood* and *Cooke*, which is opposite to the rule espoused in *Sheridan*.

7. Italics added.

8. *See Wood* and *Miller, supra.*

9. Etelson & Smith, *Union Discipline under the Landrum-Griffin Act*, 82 *Harv.L.Rev.* 727, 738 (1969); Beaird & Player, *Free Speech and the Landrum-Griffin Act*, 25 *Ala.L.Rev.* 577, 585 (1973). In the first article, the authors state:

"Section 609 'discipline' is thus to be read broadly to reach any union action which is in the nature of a retaliation for the exercise of Title I membership rights."

the president of the Local and the members of the Executive Board were ignorant of the very provision of the International Constitution and By-Laws on notice of charges and a hearing preliminary to any hearing of charges against a member. If the defendant's officers and Executive Board did recognize—as it is arguable they must have—that they were acting illegally in removing the plaintiff from office on the purported charge of non-attendance, then it is not unreasonable to conclude that the non-attendance claim was spurious and that there were other reasons which prompted the illegal and precipitate action taken by the Executive Board in removing the plaintiff from his union office. The plaintiff urges that this reason was retaliation for his criticisms of and opposition to the higher officers and members of the Executive Board of the Local. And the testimony gives support to this contention. The witnesses for the defendant, in their testimony, admitted that, in connection with the decision to remove the plaintiff from office, there was discussion of the activities of the plaintiff within the Local, of his repeated conflicts with the president and the Executive Board over union activities, of the charges of dereliction sponsored by him against such officers and of other criticisms, all within union channels and all within permissible limits for a member, of these officers of the union in connection with the latter's union responsibilities and actions. Moreover, there was no dispute that the plaintiff had actively and vigorously opposed the president of the Local and certain members of the Executive Board at the time they were elected and had already begun active work in opposition to their re-election at the impending election. Because of all this activity by the plaintiff, activity which the defendant conceded was perfectly permissible, and activity related to "matters of union business," [10] the higher officers of the Local, who dominated the Executive Board, were definitely, if not fiercely, hostile to the plaintiff and in a mood to seize on any opportunity to punish him in retaliation for this activity. This hostility was reflected in the characterization of the plaintiff by the president of the union as a "mad dog." There was thus sufficient evidence in the record to require the district judge to submit to the jury the question whether the plaintiff's exercise of his right of free speech in connection with union affairs and activities was not one, if not the primary, motivating reason for his removal from union office.[11] And the jury, by its verdict concluded that this was a motivating reason for plaintiff's removal.

■ The defendant, however, argues that the district judge erred in refusing to charge that, even if there was evidence that intention to punish for the exercise of his free speech rights as a union member was a cause of plaintiff's removal from office, the jury was required, in order to fix liability on the defendant, to find that such "intra-union political activity" was not simply *a* but the *primary* cause of plaintiff's removal. We do not agree. We have held in actions by public employees and in proceedings under the National Labor Relations Act that if a violation of a statutory or a constitutional right was *a* cause of discharge or discipline, the discharge or discipline was illegal.[12] We think the same rule should prevail in this context. We realize that in *Mt. Healthy City Board of Ed. v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, the Court held that, if a defendant has a valid ground for discharging

---

10. *See, Harrison v. Local 54 of Amer. Fed. of State, C. & M. Emp.* (3d Cir. 1975), 518 F.2d 1276, at 1280–1281, *cert. den.,* 423 U.S. 1042, 96 S.Ct. 764, 46 L.Ed.2d 631 (1976), where the scope of the free speech right protected under § 411(a)(2) or (5) is defined.

11. *See, also, Gabauer v. Woodcock, supra,* 520 F.2d at 1091, holding that "if there is evidence to support both sides a question [i.e., whether removal from office was for violation of free speech or for a valid reason] of fact is presented."

12. *United States v. Chesterfield County School Dist., S.C.,* (4th Cir. 1973), 484 F.2d 70, 72–73; *Neptune Water Meter Co. v. N.L.R.B.* (4th Cir. 1977), 551 F.2d 568, 569; *Winn-Dixie Stores, Inc. v. N.L.R.B.* (4th Cir. 1971), 448 F.2d 8, 12, n. 16; *Filler Products, Inc. v. N.L.R.B.* (4th Cir. 1967), 376 F.2d 369, 377.

a public employee, apart from the violation of some protected right, then the discharged employee is without an action. That principle, however, would not aid the defendant in this case because it is necessarily admitted that the failure to attend the hearing on April 17, 1975, gave the Local no right to remove the plaintiff from office. We accordingly find no error in this part of the district court's charge.

 But, assuming that there was a violation of plaintiff's rights redressable under § 609 of the Act, the defendant finds recovery by the plaintiff unwarranted for want of damages. In support of this argument, it points out that the plaintiff was removed from office in April and restored in July thereafter. This argument would, however, disregard the circumstance that between his removal and reinstatement plaintiff was under the strain and humiliation of having been "disciplined" unfairly (under his contention) by the defendant. In *Simmons, supra,* 350 F.2d at 1020, we held that in an action such as this, plaintiff may recover for "injury to his reputation, with accompanying mental anguish." In *Harrison v. Local 54, Am. Fed. of State, C. & M. Emp., supra,* 518 F.2d at 1279, the Court said:

> "It has been held that a union officer wrongfully removed from office and suspended from membership in the union is entitled to recover compensation for (1) The salary he would have received had he finished his term as the Union's President, (2) Damages for mental suffering and humiliation, and (3) Punitive damages."

It follows that the plaintiff, if entitled to recover, was entitled to recover for "mental suffering and humiliation." It may be that the verdict on this ground could be regarded as generous, but whether it was grossly excessive was for the district judge. We find no reason to disturb his conclusion in favor of the verdict.

 So far as the plaintiff's cause of action under state law, on which the district court directed a verdict, the jury was instructed that the plaintiff could not recover for hurt to reputation or feelings on both the federal and state causes of action and that, if they found for the plaintiff on the federal action, their verdict on the state claim should be nominal. The jury followed such instruction and returned a nominal verdict of one dollar on the state cause of action. Under the district court's ruling, that verdict was included within the verdict rendered in the federal action. Accordingly, the defendant could not be prejudiced by the district court's ruling with reference to the state claim or the verdict rendered thereon. There was but one valid money verdict against the defendant and that was on the federal count. It is accordingly unnecessary for us to consider the correctness of the District Court's ruling on the state claim.

 The district court, also, allowed the plaintiff attorney's fees. The right to make such an allowance is within the district court's discretion, *Hall v. Cole* (1973), 412 U.S. 1 at 14–15, 93 S.Ct. 1943, 36 L.Ed.2d 702, and we are unable to find an abuse of discretion in such ruling. The plaintiff, however, has asked that we allow him an additional attorney's fee in connection with this appeal. Under all the circumstances, we think that the plaintiff and his counsel have been amply compensated by the relief accorded them by the district court and we are not disposed to make any additional allowance for work done on appeal.

AFFIRMED.