Charles D. DAVIS

v.

AMPTHILL RAYON WORKERS, INC.

Civ. A. No. 77–0161–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 9, 1978.

---

Jay J. Levit, Stallard & Levit, Richmond, Va., for plaintiff.

Parker E. Cherry, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This is an action for damages and equitable relief for violations of plaintiff's rights under § 101 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411. Jurisdiction is conferred upon this Court by 29 U.S.C. § 412.

Plaintiff claims that he was improperly removed from his position as a director of the defendant union for exercising free-speech rights guaranteed by § 411. Defendant's position is that plaintiff was properly removed from his directorship for supporting a rival union in its attempts to supplant the defendant as bargaining agent at the Ampthill Rayon Plant, and so destroy the defendant.

The case was tried before a jury on 28 December 1977. After hearing all of the evidence, the argument of counsel, and the instructions of the Court, the jury returned the following special verdict:

Was Plaintiff's removal as a director based in whole or in part upon plaintiff's exercise of his right to criticize union leadership, or to seek access to financial and other information; or to disseminate information on matters of importance to his fellow union members; or to affiliate with the steelworkers union?

Yes   X

No   ———

If your answer is "Yes" then what damages is plaintiff entitled to fully and fairly compensate him for mental anguish, humiliation and distress, and for damage to his reputation?

$  None

Did the Union act in a wanton or malicious manner, or in callous or reckless disregard of plaintiff's rights, or did the union disregard his rights with unnecessary harshness or severity?

Yes   ———

No   X

Was plaintiff denied access contrary to law to financial and other information to which he was entitled as a member of the Union?

Yes   ———

No   X

On 10 January 1978 plaintiff moved the Court to award injunctive relief in accordance with the jury's verdict, and for an award of reasonable attorney fees, expenses and costs. These motions are now ripe for decision.

## I

Under 29 U.S.C. § 412 an action may be brought "for such relief (including injunctions) as may be appropriate." The propriety of granting injunctive relief depends upon the facts in the case. Before setting forth the Court's findings with respect to injunctive relief it is necessary first to consider the scope and effect of the jury's verdict.

The plaintiff sought damages as well as equitable relief in his complaint, and demanded trial by jury. The right to trial by jury in cases in which equitable and legal claims are mixed is secured as to all issues common to both claims by the Seventh Amendment. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Under the law a jury verdict in such mixed law-equity cases is binding on the court as to all matters in law and as to all matters in equity where the facts found are common to the law and equity issues. *See Dairy Queen v. Wood*, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Simmons v. Avisco, Local 713, Textile Workers Union*, 350 F.2d 1012, 1018 (4th Cir. 1965). Where a fact issue is exclusively

relevant to entitlement to equitable relief the findings of fact are for the chancellor. *Robine v. Apco, Inc.*, 227 F.Supp. 512, 517 (S.D.N.Y.1974), *aff'd on other grounds*, 386 F.2d 267 (2d Cir. 1967).

■ Thus the Court, sitting as chancellor, finds all the facts found by the jury on special verdict as well as all facts reasonably inferable therefrom. As to factual issues not submitted to the jury and factual issues not proper to be submitted to the jury, being exclusively relevant to equitable relief, the Court will make its own findings of fact. Fed.R.Civ.P. 49(a), 52(a).

Each of the bases listed in the first special verdict is impermissible as a basis for disciplining a director of a union. Thus, the "yes" answer shows that the jury found that impermissible considerations entered into plaintiff's removal "in whole or in part." The charge to the jury was based upon the view that no matter how much permissible bases may have· contributed to plaintiff's removal, plaintiff could still recover damages if any impermissible ground was a factor. *Bradford v. Textile Workers Local 1093*, 563 F.2d 1138 (4th Cir. 1977). Accordingly, the jury was asked in the first special verdict only that which was relevant to the issue of damages. The question as to the influence of permissible grounds would not be one "common with those upon which [plaintiff's] equitable relief is based," [369 U.S. at 479, 82 S.Ct. at 900] but instead would be a question wholly irrelevant to the · question of damages and relevant only to the equity issue.

Even if it be argued that the question of the role of permissible considerations in plaintiff's removal should have been submitted to the jury, it was not so submitted. Thus, it was an omitted question within the meaning of Fed.R.Civ.P. 49(a). Under Rule 49(a) the Court may make its own findings as to questions which are omitted from a special verdict without objection from counsel. The findings herein may thus be considered alternatively as being based upon this Rule 49(a) authority.

## II

The Court heard all the evidence and considered the demeanor of the witnesses, their candor and intelligence, and the confidence with which they answered the questions of both the Court and counsel. The Court is therefore in a position to make its findings of fact from the testimony presented before the jury.

■ The Court finds from a preponderance of the evidence that impermissible considerations played a minimal part in the defendant's decision to remove the plaintiff from office. The Court finds that the plaintiff, although a member of the Board of Directors of the defendant union, was actively supporting a rival union in its attempts to supplant defendant as bargaining agent at the Ampthill Rayon Plant. The Court further finds that the defendant reasonably believed that the plaintiff was actively supporting a rival union in its attempts to supplant defendant and was acting primarily and indeed almost exclusively upon its belief that plaintiff was actively supporting a rival union when it removed plaintiff from office.

The Court is mindful of and is bound by the jury's verdict that impermissible considerations formed the basis "in whole or in part" of plaintiff's removal. However, there are indications in the jury's verdict that the jury found the part played by the impermissible considerations to be a minor one. One such indication is the failure of the jury to award compensatory damages, which may indicate that the jury felt the plaintiff's loss caused by the impermissible behavior of defendant to be minimal. Another indication is the jury's finding that the defendant did not act in callous or reckless disregard of plaintiff's rights, or disregard plaintiff's rights with unnecessary harshness or severity.

■ The Court further finds that the likelihood that the defendant will continue to remove directors from office or otherwise discipline its members based upon their exercise of protected rights has not been shown to be substantial. The Court

finds that there is no evidence that defendant is contemplating reprisals against anyone for his part in this litigation.

■ The evidence upon which the Court bases its findings can be stated briefly. Defendant Ampthill Rayon Workers Union is a local union representing workers at the DuPont Ampthill Rayon Plant near Richmond. The United Steelworkers of America entered into negotiations with defendant for the purpose of persuading defendant to affiliate with the Steelworkers, but these efforts were unsuccessful and were broken off sometime before the incidents which led to this lawsuit. After the negotiations were terminated membership cards for the Steelworkers Union began to appear at the Ampthill Rayon Plant and it was clear that the Steelworkers were appealing directly to the rank and file, not for affiliation but to supplant the local union. Collection of these membership cards is the first step toward an election for the purpose of replacing one union with another as bargaining agent at the plant. The plaintiff testified that he had some of these membership cards in his possession and had distributed some of these cards to employees at the plant. The defendant's witnesses testified that plaintiff also distributed in the plant cafeteria a handbill announcing a meeting sponsored by the Steelworkers to members of the defendant union. In response to this testimony, plaintiff testified that he was not sure who was sponsoring the meeting

advertised in the handbill he was distributing, and that he was only distributing the handbill to those workers who approached him and asked for a copy. In the light of all the evidence in the case, this testimony is incredible. The Court does not believe the plaintiff's testimony, and thus gives it no weight.[1]

■ On the basis of these findings and the verdict of the jury, the Court concludes that injunctive relief is inappropriate in this case. The jury found that the defendant did not act in a wanton or malicious manner, or in callous or reckless disregard of plaintiff's rights, or disregard plaintiff's rights with unnecessary harshness or severity. The jury found there was no denial of financial or other information to plaintiff in violation of the LMRDA. The jury found that plaintiff suffered no damages resulting from defendant's actions. These findings, coupled with the findings of the Court, show that it is neither appropriate nor necessary to enjoin defendant from violating the law.

In *Bailey v. Netter*, 266 F.Supp. 165 (E.D. La.1967) the district court refused to enter an injunction against the defendant union where the plaintiff had been compensated for any damages he suffered by a payment under a settlement effected by the NLRB, and so could show no damages in his suit under § 412. In *Kelsey v. Local 8, International Alliance of Theatrical Stage Employ-*

---

1. In a jury verdict form submitted prior to trial, plaintiff asked that the question of whether plaintiff was advocating membership in a rival union, advocating affiliation with an international union, or merely seeking to inform workers as to matters concerning them, when he distributed the handbill in question, be submitted to the jury. The Court declined to submit this question to the jury because a special finding on this question would not affect the liability of the defendant union under the rule in *Bradford*. At the close of the trial, counsel for plaintiff made this objection: "I object to you not granting all of the instructions that I submitted, and I had my authorities for them and my jury verdict forms." (Transcript of Objections, p. 3.)

The Court does not believe that this vague reference to the plaintiff's jury verdict forms is sufficient to constitute a demand for submis-

sion of the omitted issue "before the jury retires" as required by Fed.R.Civ.P. 49(a). *Cote v. Estate of Butler*, 518 F.2d 157 (2d Cir. 1975). The questions presented by plaintiff on his jury verdict forms were largely incorporated in the Court's special verdict. Plaintiff did not call the Court's attention specifically to the jury verdict form he was referring to or that portion of a requested form not covered by the form submitted to the jury. The demand made by counsel did not focus on the question of the extent to which, if at all, permissible motives actuated defendant in its removal decision. Moreover, the answer to this question would not have been helpful in determining the issue of the liability of defendant to plaintiff for damages. The question is important only to plaintiff's prayer for equitable relief, and thus there was no right to have the issue submitted to the jury in any case.

ees, 294 F.Supp. 1368 (E.D.Pa.1968) *aff'd on other grounds*, 419 F.2d 491 (3d Cir. 1969), cert. den. 397 U.S. 1064, 90 S.Ct. 1501, 25 L.Ed.2d 685 (1970), the district court granted an injunction against the defendant union despite the fact that plaintiff did not show that the illegal discipline against him was continuing. The Court specifically found, however, that there was a likelihood that similar illegal acts would be committed against the plaintiff unless the defendants were subject to legal restraint. The Court based its finding on the patent capriciousness of the defendant's illegal acts. It was clear that absent a finding that future violations by defendants were likely, no injunction would have issued in *Kelsey.*

Because the Court finds that there is no likelihood of future violations by the defendant in this case, no injunction will issue restraining defendant from violating the law. Further, the Court perceives no utility to either party or the union members to be derived from a forced publication of the verdict in this case. It is a matter of public record in any event. Accordingly, the Court will not order defendant to publicize the jury's verdict or any other document in this suit.

### III

Plaintiff asks the Court for an award of a reasonable attorney's fee, expenses and costs. The Court's authority to award attorney's fees in suits under 29 U.S.C. § 412 is based not upon a statutory authorization but upon the general equitable power of the Courts. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The Court awarded counsel fees in *Hall* under a "common benefit" rationale in which those who benefit from a successful lawsuit are made to share in the burden of the lawsuit through the mechanism of charging the defendant with the payment of the plaintiff's counsel fees. This mechanism is appropriate in such cases as stockholder derivation

actions and suits by union members against their unions under the LMRDA. 412 U.S. at 5–7, 93 S.Ct. 1943.

Thus, in order to find that an award of attorney fees is appropriate, the Court must find that plaintiff's suit conferred a substantial benefit on the members of the defendant union. This the Court is unable to do. The jury's finding that protected activity played some part in plaintiff's removal from office, which is all that plaintiff has gained from this lawsuit, has not and will not substantially benefit the members of the union.[2] The jury did not find to what extent plaintiff's exercise of protected rights was the cause of plaintiff's removal for the reasons stated above. However, the question of whether impermissible considerations were paramount or merely incidental to the plaintiff's removal is highly relevant to the question of whether the union membership has benefitted substantially from plaintiff's lawsuit, and it is this question which is before the Court in deciding whether to exercise the Court's equitable power to award attorney's fees.

The findings of fact in Part II, *supra*, dispose of any question as to the relative weight of impermissible bases in the decision to remove plaintiff from office. The overwhelming weight of the evidence shows that plaintiff, although a member of the board of directors of the defendant union, was actively supporting a rival union in its attempts to supplant defendant as bargaining agent at the Ampthill Rayon Plant.

Congress has specifically recognized that unions may make reasonable rules as to the responsibility of members to their union as an organization. 29 U.S.C. § 411(a)(2). The Court is of the view that the union·rule that a director may be removed for supporting a rival union falls within the proviso of § 411(a)(2). *Sawyers v. Grand Lodge International Association of Machinists*, 279 F.Supp. 747 (E.D.Mo.1967). The Court finds that the defendant was

---

2. The Court also does not believe that plaintiff may fairly be termed the "prevailing party" in this lawsuit, in view of the fact that he has not shown himself entitled to any of the relief

prayed for in his complaint. *Cf. Nix v. United States*, No. 76–1898, 572 F.2d 998 at 1006 (4th Cir. February 28, 1978), slip op. at 21.

primarily concerned with enforcing its lawful rules when it removed plaintiff from office.

The rule under which plaintiff was removed from office is a rule established for the protection of the union. The fact that the removal of the plaintiff was in part the result of his protected activities does not alter the fact that the interests of the union membership were benefited by defendant's removal of a director who had shown his disloyalty to the union. The activity of the defendant in vindicating its right to enforce its reasonable rules has benefitted the union members, while plaintiff has, by his litigation, done nothing of benefit to the union membership. The Court will not award attorney's fees to plaintiff for his litigation against a defendant whose staunch defense has helped all the membership by protecting their union's right to survive.

Finally, in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) the Supreme Court disapproved of a rule of causation in public employee free speech cases which could place an employee in a better position as a result of the exercise of protected conduct than he would have occupied had he done nothing. While the applicability of the rule in *Mt. Healthy* to the liability issue in the present case is not wholly clear after *Bradford*,[3] the same considerations that concerned the Supreme Court in *Mt. Healthy* lead this Court in the exercise of its discretion to conclude that an award of attorney fees in this case is not appropriate. The defendant should not be held liable for

attorney fees where its actions would have been the same even if it had not taken plaintiff's protected conduct into account.

An appropriate order will issue.

---

**3.** In *Bradford*, the Court of Appeals held that the district court did not err in refusing to charge the jury that the plaintiff's protected conduct must have been the primary cause of his removal in order for defendant to be liable. In this, the Court of Appeals said, the same rule should apply as applies in proceedings under the National Labor Relations Act. In *Neptune Water Meter Co. v. NLRB*, 551 F.2d 568 (4th Cir. 1977) the Court of Appeals held that while discriminatory motivation need only be a factor in the discharge of an employee for the NLRB to find an unfair labor practice, "an unfair labor practice may be found only if there is a basis in the record for a finding that the employee would not have been discharged . .

except for the fact of his union activity." 551 F.2d at 570. In *Bradford*, the Court of Appeals went on to hold that *Mt. Healthy* cannot apply to the case because there was no evidence of an alternative permissible reason to support the removal of the plaintiff from office.

The Court in charging the jury in this case read *Bradford* to mean that even if permissible reasons for removing the plaintiff existed, and even if plaintiff would have been removed in the absence of his protected conduct, plaintiff would prevail if any part of the plaintiff's removal was based on his protected activity. Even under this liberal reading of the standard to be applied the jury found no damages.