PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 10/22/96**

TENID CIRCUIT

AIRCRAFT MECHANICS
FRATERNAL ASSOCIATION, an
Unincorporated Association and Labor
Organization,

       Plaintiff,

    and

KENYON WALLIS,

       Plaintiff-Appellant,

v.

TRANSPORT WORKERS UNION OF
AMERICA, Local 514, Air Transport
Division, AFL-CIO,

       Defendant-Appellee.

No. 95-5273

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 94-C-924-H)

Submitted on the briefs:

Joe L. White, Collinsville, Oklahoma, for Plaintiff-Appellant.

Steven R. Hickman of Frasier, Frasier & Hickman, Tulsa, Oklahoma, for
Defendant-Appellee.

Before BRORBY, BARRETT, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

In this appeal,[1] we address whether a union violated the freedom of speech and assembly provision of the Labor Management Reporting and Disclosure Act (LMRDA), see 29 U.S.C. § 411(a)(2), when it suspended one of its members for assisting a rival union's adversarial effort to prompt a representation election and displace it as incumbent. After considering the pertinent statutory authority and associated case law, we hold that the disciplinary action taken by the union was a reasonable defense of its institutional integrity and, therefore, permissible under § 411(a)(2).

## I

The pertinent facts are not in dispute. The Transport Workers Union of America (TWU) is the certified bargaining representative for various mechanic and maintenance employees of American Airlines. Defendant Local 514 is the agent for TWU at the facility where plaintiff Kenyon Wallis is employed. While

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

a member of Local 514, plaintiff executed an election authorization card on behalf of another union, which stated: "I authorize the Aircraft Mechanics Fraternal Association [AMFA] to request the National Mediation Board to conduct an investigation and a representation election and upon winning to represent me as my agent in accordance with the terms and provisions of the Railway Labor Act, as amended." Appellant's App. at 70, 71. Plaintiff also distributed and encouraged fellow employees to execute such cards.

A shop steward eventually wrote out a complaint against plaintiff, who was charged with violating union constitutional provisions which prohibit advocating withdrawal from TWU or promoting a rival union ("dual unionism"). Following notice and a hearing, the Local 514 Executive Board placed plaintiff in bad standing for a period of three years. During this time, plaintiff is "ineligible to attend Union meetings, to be a candidate for or hold any Union office or position, or to vote in any Union election or referendum or otherwise participate in Union affairs." Appellee's App. at 14. However, neither his employment nor his right to fair representation by the union is affected.[2]

---

[2] The union argues that, given the absence of such consequences, plaintiff has suffered no cognizable injury. This argument elevates the collateral over the primary. As our later discussion of the LMRDA reflects, plaintiff's discipline, whatever its other, secondary consequences, involves the loss of the very participatory rights the LMRDA was enacted to guarantee. This loss is precisely what the Act's civil enforcement mechanisms, see 29 U.S.C.

(continued...)

Alleging that the disciplinary proceedings and resulting sanction interfered with his organizational rights, plaintiff Wallis[3] commenced this action for injunctive relief against Local 514.[4] The parties stipulated to the material facts and filed cross-motions for summary judgment. The district court granted the union's motion, stating:

> The Court believes that this dispute is covered by the [LMRDA]. Pursuant to 29 U.S.C. § 411(a)(2), the right of free speech of a member of a labor organization is limited to the extent that the organization has adopted and enforces "reasonable rules as to the responsibility of every member toward the organization as an institution." As a result, TWU had the right to discipline Plaintiff for his conduct. See, e.g., Mayle v. Laborer's Int'l Union of North Amer., Local 1015, 866 F.2d 144, 146-47 (6th Cir. 1988)[holding

---

[2](...continued)
§§ 411(a)(5), 412, 529, are intended to redress. See, e.g., Finnegan v. Leu, 456 U.S. 431, 437-38 (1982); Gesink v. Grand Lodge, 831 F.2d 214, 217 (10th Cir. 1987); Franza v. International Bhd. Of Teamsters, 869 F.2d 41, 47 (2d Cir. 1989).

[3] Plaintiff's counsel initially included AMFA on the pleadings, but later conceded the organization could not "piggyback" on Wallis's personal claim and voluntarily dismissed it from the case. See Appellant's App. at 99-100.

[4] Local 514 argues plaintiff should have sued the international union, which is the authorized bargaining representative. This argument misconceives the nature of the action, which seeks redress not for the union's conduct of bargaining or representational duties, but for its imposition of a sanction for statutorily protected activities. Accordingly, it is the local union imposing the challenged discipline that is the proper defendant, although the international union may also be subject to suit if it participated in, ratified, or exerted sufficient control over the local's action. See, e.g., Phelan v. Local 305 of the United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus., 973 F.2d 1050, 1061-62 (2d Cir. 1992), cert. denied, 507 U.S. 972 (1993); Borowiec v. Local No. 1570, 889 F.2d 23, 26 (1st Cir. 1989); Chapa v. Local 18, 737 F.2d 929, 932 (11th Cir. 1984).

-4-

discipline for dual unionism permissible]; <u>Ferguson v. International Ass'n of Bridge, Structural & Ornamental Iron Workers</u>, 854 F.2d 1169, 1174-75 (9th Cir. 1988)[same].

Appellant's App. at 90-91.

## II

As a matter of federal procedure, we review the district court's summary judgment determination de novo. <u>See</u> <u>Wolf v. Prudential Ins. Co.</u>, 50 F.3d 793, 796 (10th Cir. 1995). More importantly, because the controlling issue is not the sufficiency of the evidence adduced at the union hearing to establish plaintiff's charged conduct, but, rather, whether that undisputed conduct provided a statutorily permissible basis for the resulting discipline, our consideration of the underlying substance of this case is de novo as well. <u>See</u> <u>Black v. Ryder/P.I.E. Nationwide, Inc.</u>, 970 F.2d 1461, 1467-69 (6th Cir. 1992)(while "some evidence" standard governs judicial review with respect to procedural adequacy of union disciplinary proceeding, statutory authorization/prohibition of proceeding itself is reviewed de novo); <u>cf.</u> <u>Hill v. NTSB</u>, 886 F.2d 1275, 1278 (10th Cir. 1989)(review of administrative fact findings limited by "substantial evidence" standard, but interpretation of statutory provisions considered de novo). <u>See generally</u> <u>United States v. Diaz</u>, 989 F.2d 391, 392 (10th Cir. 1993)(construction of federal statutes is legal matter reviewed de novo on appeal).

We need also to clarify the breadth of our review here. Before plaintiff turns to his argument on the merits under § 411(a)(2), he includes in his opening brief a short summary of the role of the National Mediation Board in elections and labor disputes under the Railway Labor Act (RLA), which covers his air-carrier employer, see 45 U.S.C. § 181. In this summary, plaintiff notes the general importance of representational choice, quoting from unfair labor practice provisions of the RLA, see 45 U.S.C. § 152 (Fourth), and the National Labor Relations Act (NLRA), see 29 U.S.C. § 158(b). The immediate significance, if any, of this background exposition is never made clear. Plaintiff does not contend, for example, that the district court erred in relying on the LMRDA to resolve the case, nor does he cite any authority for application of the quoted NLRA and RLA provisions to the intra-union dispute at issue here. The union, on the other hand, notes that (1) the NLRA does not apply to air carrier employment, see Barnett v. United Air Lines, Inc., 738 F.2d 358, 361 (10th Cir.), cert. denied, 469 U.S. 1087 (1984); Johnson v. Express One Int'l, Inc., 944 F.2d 247, 250 (5th Cir. 1991), and (2) the cited RLA provision refers only to employer interference in union affairs, not to internal union disciplinary proceedings. The latter proceedings are precisely the subject of the LMRDA provision exclusively relied on by the district court--as well as by all of the pertinent authorities we consider below. Further, in his reply brief, plaintiff does not even mention the NLRA or

-6-

RLA provisions, much less respond to the union's arguments regarding their inapplicability.  Under the circumstances, we shall consider only the question expressly decided by the district court:  whether plaintiff's suspension violated the speech and assembly guarantees of the LMRDA.

### III

Section 411(a)(2) guarantees a union member "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates [for union office] . . . or upon any business properly before the meeting."  However, these individual rights are expressly qualified by recognition of an overarching interest in maintaining the integrity and effectiveness of the union as the collective representative of all of its members:  "*Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal and contractual obligations."  Id.

Following the structure of the statute, the Supreme Court has outlined a two-step analysis for the resolution of § 411(a)(2) claims:

> To determine whether a union rule is valid under the statute, we first consider whether the rule interferes with an interest protected by the first part of [§ 411(a)(2)].  If it does, we then determine whether the rule is "reasonable" and thus sheltered by the

proviso to [§ 411(a)(2)]. . . . The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution.

United Steelworkers v. Sadlowski, 457 U.S. 102, 111-12 (1982).  In conducting this analysis, we are to "find guidance in the policies that underlie the LMRDA in general and Title I [the "bill of rights" section including § 411(a)(2)] in particular."  Id. at 111.

## A

The Supreme Court has on numerous occasions consistently identified the paramount purpose of § 411(a)(2), and the LMRDA generally, to be that of assuring rank-and-file members' democratic participation in intra-union affairs, such as voting in union elections, standing for union office, and approving (or challenging) official union policies and decisions.  See, e.g., Reed v. United Transp. Union, 488 U.S. 319, 325 (1989); Sadlowski, 457 U.S. at 112 (majority op.), 122-23 (White, J., dissenting); Finnegan v. Leu, 456 U.S. at 435-37; Hall v. Cole, 412 U.S. 1, 14 (1973).  Members' free speech rights are, accordingly, seen as a necessary means for the "improvement or preservation of democracy within the union."  Reed, 488 U.S at 326 (emphasis added); see also Sadlowski, 457 U.S. at 112 ("democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal").

## B

Unlike internal political struggle and critical debate, which may unsettle current leadership but do not undermine the union as an institution, members' advocacy of representation elections and promotion of rival organizations therein obviously "threaten[] the continued existence of the union [itself]," Mayle, 866 F.2d at 147. Moreover, such "[d]ual unionism impairs the ability of a union to carry out its collective bargaining responsibilities by diminishing its authority as bargaining representative." Local 1199, Drug, Hosp. & Health Care Employees Union v. Retail, Wholesale & Dep't Store Union, 671 F. Supp. 279, 286 (S.D.N.Y. 1987); see, e.g., Ferguson, 854 F.2d at 1172, 1174 (noting individual members' efforts on behalf of rival impaired union's ability to negotiate with employer on behalf of all members). A further threat to the union in such circumstances has been articulated best in an analogous NLRA context, when a (noncarrier) union has suspended or expelled a member for working to decertify it as bargaining representative. In rejecting the member's resultant unfair labor practice charge under 29 U.S.C. § 158(b)(1)(a), which, like § 411(a)(2), qualifies protections afforded against certain union practices with a specific proviso preserving the union's right "to prescribe its own rules with respect to acquisition or retention of membership," NLRA authorities note that:

> In the case of a decertification petition, the employee seeks to attack the very existence of the union as an institution. And unless the union can expel the member who seeks its destruction, during the pre-election campaign, the member could campaign against the union

while remaining a member and therefore privy to the union's strategy and tactics.

NLRB v. United Union of Roofers, Waterproofers & Allied Workers Local No. 81, 915 F.2d 508, 511 n.2 (9th Cir. 1990)(internal quotations omitted); see also NLRB v. International Molders & Allied Workers Union, Local No. 125, 442 F.2d 92, 94 (7th Cir. 1971).

In recognition of such institutional interests, the courts have generally held that a union is entitled to protect itself by suspending or expelling a member who has engaged in dual unionism. See, e.g., Catlett v. Local 7370 of the United Paper Workers Int'l Union, 69 F.3d 254, 260 (8th Cir. 1995); Mayle, 866 F.2d at 146-47; Ferguson, 854 F.2d at 1175; Davis v. Ampthill Rayon Workers, Inc., 446 F. Supp. 681, 686-87 (E.D. Va. 1978), aff'd, 594 F.2d 856 (4th Cir. 1979)(Table); Meader v. District Lodge # 4, Indus. Union of Marine & Shipbuilders Workers, 786 F. Supp. 95, 101-02 (D. Me. 1992). We note that this general agreement breaks down when the union goes beyond such "defensive" measures as suspension or expulsion and affirmatively punishes the offending member--particularly one forced to remain in the union to preserve his or her job--with financial penalties or adverse employment consequences. See, e.g., Airline Maintenance Lodge 702 v. Loudermilk, 444 F.2d 719, 723-24 (5th Cir. 1971); Ballas v. McKiernan, 315 N.E.2d 758, 761 (N.Y.), cert. denied, 419 U.S. 1034 (1974); see also Ferguson, 854 F.2d at 1175-76 (upholding imposition of

-10-

fines and distinguishing <u>Loudermilk</u> and <u>Ballas</u> on basis that "the union members [in those cases] were employed under a union shop provision" and, thus, "would have lost their jobs as well as their union membership had they refused to pay the fines"). However, these considerations are not present here.

The facts of this case clearly implicate the union interests protected by the proviso in § 411(a)(2), and place the case squarely within the body of "dual unionism" precedent cited above. We emphasize that this charge extends beyond the obviously improper maintenance of duplicitous union affiliations to include the active promotion of a rival labor organization contrary to the interests of one's own union:

> An authoritative glossary of labor law terminology defines "dual unionism" as follows:
>> Secret or open efforts of union members to undermine the union and substitute another union as representative of employees. . . .
> Labor Relations Reporter (BNA), LRX 226-27 (1987). Another authority provides:
>> Dual unionism may . . . be used as a charge (usually a punishable offense) leveled at a union member or officer who seeks or accepts membership or position in a rival union, or otherwise attempts to undermine a union by helping its rival.
> Roberts, <u>Roberts' Dictionary of Industrial Relations</u>, 160-61 (3d ed. 1986).

<u>Local 1199, Drug, Hospital & Health Care Employees Union</u>, 671 F. Supp. at 285-86 (citing, as example, <u>NLRB v. Teamsters Local 815</u>, 290 F.2d 99, 101 (2d Cir. 1961), where member's "dual union activity" consisted of being "active in

-11-

behal of the rival union and sign[ing] a card authorizing [the rival union] to be his exclusive bargaining representative"); see, e.g., Davis, 446 F. Supp. at 685 (sanctionable support of rival union consisted in distributing cards on its behalf to prompt representation election); Meader, 786 F. Supp. at 100 (sanctionable support of rival union consisted in collecting signatures and filing election petition on behalf of rival). In requesting an election on behalf of AMFA to unseat his own union as collective bargaining representative, expressly authorizing AMFA, in advance, to serve as his representative, and further promoting AMFA's efforts in this regard by distributing and encouraging others to sign its authorization cards, plaintiff undertook a course of action contrary to the institutional interests of a union in which he voluntarily retained membership. Accordingly, we hold that the union did not violate § 411(a)(2) by suspending plaintiff's participatory rights of membership.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.