Floyd H. LAMB et al., Plaintiffs,

v.

Arnold MILLER et al., Defendants.

Civ. A. No. 79–1579.

United States District Court,
District of Columbia.

April 11, 1980.

James R. Klimaski, Paul Alan Levy, Washington, D.C., for plaintiffs.

Isaac N. Groner, Harrison Combs, Peter Mitchell, Marilyn Townsend, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The plaintiff Floyd H. Lamb is a member of the United Mine Workers of America (UMWA) and at one time served as a District 6 representative to and member of the International Executive Board (IEB). While serving as a representative he was charged with insubordination in that he failed and refused to account for expenditure of union funds as required by the UMWA Constitution and law. Because of his refusal he was first suspended as District 6 representative by the Union's president Arnold Miller. The suspension was sustained by the IEB. President Miller then removed Lamb from office because of his continued failure to submit the required accounting. Miller's removal action was sustained by the IEB. Later Lamb submitted certain documents, purporting to comply with the request for an accounting. He was advised that the submissions were unacceptable, since they were incomplete and did not comply with the Union's requirements. On October 28, 1979, the IEB again voted to remove Lamb from office by a vote of 21–1.

Lamb brought this action in June 1979 naming Miller and the UMWA as defendants asserting that their actions were unlawful and otherwise violated his rights under the Labor-Management and Disclosure Act of 1959, 29 U.S.C. §§ 411(a)(1), (a)(2), (a)(4) and 529. Specifically he seeks an order declaring that he is a member of the IEB; an order enjoining the defendants from interfering with and refusing to allow his participation as an IEB member; and finally, damages consisting of salary and benefits he would have received as a member of the IEB. Anthony Bumbico, a UMWA member, residing in District 6 joined Lamb as a co-plaintiff. Bumbico claims that he and his fellow UMWA members of District 6 have been unlawfully deprived of representation on the IEB and that their statutory rights have also been violated.

Lamb's complaint charges that his suspension and removal were politically motivated and retaliatory measures because of his challenge and opposition to Miller's leadership and policies as the president of the Union. Early in the proceedings he applied for and was denied a preliminary injunction. The defendants also filed and argued a motion for summary judgment. That motion was denied. The parties were then directed to exhaust discovery and pre-trial proceedings were completed.

Presently before the Court is a second motion for summary judgment filed by the defendants. The memoranda of points and authorities, the stipulation of facts by counsel for the parties, transcripts of IEB meetings,* affidavits and depositions, and the oral argument of counsel have been considered. For the reasons presented below, the Court determines that the defendants are entitled to summary judgment and the complaint should be dismissed.

While the plaintiffs have referred to and cited a number of incidents and portions of the record which they claim amount to and present disputed factual matters and thus preclude a grant of summary judgment, there is no dispute to the following material and underlying facts which are central to this determination. And on basis thereof the Court decides that entry of summary judgment for the defendants is warranted.

### A.

In January, 1977, Floyd H. Lamb was elected and assumed office as a member of the IEB, representing District 6 of the UMWA. As an IEB member he received airline and telephone credit cards for use on UMWA business. He also received a UMWA expense book which contained a section entitled "Expense Guidelines" and included detailed instructions for its use. The instructions provided:

> The back of the expense voucher must include a description of what activities you were involved in when incurring these expenses. This should include the places you visited, the person(s) you saw, and the purpose of the trip. Expenses will not be paid without this information.

> Receipts must be attached for all hotel, airline, train or car rental bills.

The UMWA required slips from UMWA credit cards to be attached to the voucher of the individual who has incurred the expense.

Prior to his election to the IEB, Lamb had served as Secretary-Treasurer of UMWA District 6. In pre-trial discovery he admitted that as Secretary-Treasurer his duties included reviewing expense sheets and that he was thus familiar with the UMWA expense book instructions.

Initially, in early 1977, Lamb used his expense book and submitted all required expense vouchers to the UMWA arising from service on the IEB. Included in the record as exhibits, are vouchers prepared and submitted by him on January 15 and 31, 1977. Those vouchers were in proper form, they were approved and Lamb was reimbursed by the Union. After March

---

* The parties submitted a stipulation on February 26, 1980 that all IEB transcripts of meetings filed in this proceeding were accurate.

1977, however, he failed to submit the required expense vouchers and reports until after removal from his IEB position.

In January and February 1978, Lamb requested, was granted and received three separate cash advances from the UMWA. The advances totaled $1300 and were for reimbursable expenses incurred while on UMWA business and purposes. In early August 1978, Milier directed Lamb to document properly all his expenses, including the advances. He was also told that he faced suspension for failure to comply. Lamb had not submitted any expense vouchers by August 28, 1978, when an official meeting of the IEB convened. Lamb was present at the meeting and Miller stated that he had suspended Lamb for insubordination because he had not submitted the required records and vouchers. He requested approval of his action.

Lamb's suspension was discussed at length and he participated in the discussion. He confirmed that he had been directed to submit vouchers and defended his failure to do so on the grounds that "the union is in bad financial shape" and it was not necessary in his circumstances since he did not "intend to charge the union." Lamb did not suggest that he was being treated in any special way nor did he or anyone present suggest that any member of the IEB was acting out of political motivation or reprisal.

The IEB determined that Lamb had violated the UMWA constitution and the law in that he had failed to submit required accounting records. He was considered insubordinate and his suspension was sustained by a vote of 18 to 6.

While earlier Lamb may have claimed some uncertainty as to what was required of him it was conceded at the oral argument that as of the August 28 meeting, he understood precisely what was required. Indeed, the minutes of the meeting reflect that fact. In particular, he understood that the IEB required receipts supporting the amount of the advances. As to the $1300 in advances, Lamb felt that the UMWA was obligated to charge advances against an employee's pay, and when such was done, the matter was closed and no documentation was required establishing that the advances were devoted to legitimate union purposes. At the same time, however, he knew that the advances had not been charged against his pay.

Several months later, on October 6, 1978, at a conference of District 6 Local Union and District officers—Lamb's home base—his suspension by the IEB was discussed. The plaintiff argued his case and Vice President Church of the UMWA also made a presentation. The conference adopted unanimously a resolution instructing Lamb to submit his expense vouchers with supporting documentation and explanation to the UMWA.

Around the time of that meeting there was also an exchange of correspondence concerning the matter between the plaintiff's attorney, H. John Rogers (October 6, 1978) and the general counsel for UMWA, Harrison Combs (October 12, 1978). The UMWA counsel explained what was required for Lamb's accounting and identified the Union official from whom plaintiff could obtain any additional information he might need. Thereafter plaintiff filed expense sheets without the required supporting receipts. He did not account for the $1300 in advances.

Miller responded to Lamb's submissions and on October 23, 1978, wrote him stating that the reports were unacceptable, in that they failed to explain purposes for expenditures, were not supported by necessary support documentation and did not account for the advances. Miller's letter concluded, "Until you fully comply with the directives of I.E.B. and the District 6 conference your suspension will remain in effect, and further action will be taken as may be appropriate." Miller then removed Lamb from office because of his continued failure to submit proper accounting records, citing as authority the UMWA Constitution.

On November 28, 1978, by unanimous vote, the IEB upheld his removal from the Board. Lamb appeared and participated in the meeting. There it was represented, and

Lamb did not deny, that no other IEB member had not followed the UMWA expense accounting rules and regulations, and there was no member whose expense vouchers were submitted in the same form as Lamb's. As to the filling out of expense vouchers, Lamb admitted that he knew what was required.

In March 1979, a special District 6 election was held for IEB membership. Lamb was elected and certified to office on April 1, 1979. Miller again suspended him and gave written notice on April 11, that at the forthcoming IEB meeting, he could "appear and present whatever reasons [he] may have as to why [the suspension] from office should not be approved by the International Executive Board." Lamb appeared and presented his position at the July 25 meeting and the Board voted to suspend him by a tally of 18 to 1. As of that date Lamb had not submitted the required expense vouchers.

Three months later, on September 28, 1979, Lamb submitted expense vouchers covering the dates of each use of his UMWA credit cards, noting the Union purposes for which the money was spent. No receipts were attached and the vouchers were not approved. Thereafter, on October 16, 1979, Miller removed Lamb from office. One week following that action Lamb finally submitted appropriate and complete expense vouchers and otherwise complied with the Union's accounting procedures and requirements. On October 28, 1979, following notice, the IEB upheld President Miller's action, by a vote of 21–1, to remove the plaintiff from office. Lamb was removed from office for insubordination. He had taken more than one year to provide an accounting of expenditures of Union funds.

1.

At the several meetings of the IEB, from August 28, 1978 through October 28, 1979, when the plaintiff was called upon to provide the appropriate and required accounting, he never made charge or complaint of discriminatory or disparate treatment, nor did he allege that Miller or any member of the IEB or the Union was politically moti-vated or that the defendants exercised reprisals in considering this case. This much is clear not only from the stenographic transcripts of minutes of the IEB meetings but was also conceded by Lamb's counsel at the oral argument on the defendants' motion.

The present complaint was filed on June 19, 1979. Lamb had filed an earlier proceeding before this District Court, Civil Action No. 79–0696, on March 5, 1979, naming Miller and the UMWA as defendants. The relief sought paralleled that requested here, reinstatement as District 6 representative and damages. In the March complaint, Lamb made no allegation or charge of politically motivated disciplinary proceedings or reprisals. While he filed the complaint "pro-se," the pleading was also signed by his attorney, H. John Rogers of New Martinsville, West Virginia as "of counsel." The complaint was later dismissed without prejudice.

At the IEB meeting of July 25, 1979, Lamb requested that a letter of April 19, 1979, he had written to Miller be made a "matter of record and just consider it my closing argument." Lamb's letter contained no reference to any political motivation or reprisals by Miller or the Union but rather was confined to a statement: (1) that Miller's position on the necessity of an accounting was mistaken; (2) that he (Lamb) had absorbed expenses which would have been charged to the Union; and (3) that his (Lamb's) manner of reporting expenses was intended to save the Union money.

The plaintiff's stubborn refusal to supply the requested documentation and vouchers was based upon his personal interpretation of the accounting rules and policy which were contrary to those required and adopted by the Union. His attitude, response and opposition to the defendants' several requests for an accounting were ill-considered.

After extended discovery Lamb still offers no affidavit or any supportive evidence to buttress his claim that either the UMWA or the IEB was politically motivated

against him or that he was their reprisal target. Nor is there any showing that the Union and the IEB were in any way dominated by and subject to the will of President Miller.

Lamb's argument that Miller was motivated in suspending and removing him as a member of the IEB and enforcing the UMWA expenses accounting rules by a desire to get rid of and exile him as a principal political opponent is overdrawn. Essentially, he refers to policy disagreements with Miller within the Union. However, his activities and role in that regard were not unique or unusual. They are a part of the day-to-day operation of a union.

2.

There is no contention by the plaintiff nor does the record show that the defendants failed to comply with the UMWA Constitution in suspending and removing the plaintiff as the District 6 representative. Article 5, Section 3, of the Constitution provides that the President "may suspend or remove any International Officer [IEB Members are International Officers] or appointed employee for insubordination or just and sufficient cause." Section 5 of Article 5 provides, "All appointments, suspensions and removals from office done by the President shall be subject to the approval of the International Executive Board." Section 7 of the same Article authorizes the President to interpret the meaning of the Constitution subject, however, to repeal by the IEB. Between sessions of the Board the President has full power to direct the workings of the Union but he is required to report his acts to the Board for approval.

B.

The Court has jurisdiction over this action under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411 and 412. *Cooke v. Orange Belt District Council of Painters,* 529 F.2d 815 (9th Cir. 1976); *Wood v. Dennis,* 489 F.2d 849 (7th Cir. 1973) *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

The plaintiff Lamb was requested to but he failed to comply fully with the Union's directives for an accounting until October 1979. He acted deliberately and in doing so he was insubordinate.

The requirements and demands placed upon Lamb by the defendants were necessary, reasonable and proper. They were also authorized and mandated by the Act. All labor unions, including the UMWA, are required under § 431(b)(3) to file annual financial reports with the Secretary of Labor disclosing "allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer." Section 436 provides that a union shall "maintain records on the matters required to be reported [under § 431(b)(3)] which will provide in sufficient detail the necessary basic information and data from which the documents . . . may be verified, explained . . . and checked for accuracy and completeness . . . ." Moreover, an outstanding injunction entered by Chief Judge William B. Bryant of this Court directs the UMWA in particular to maintain such detailed financial records. *Hodgson v. United Mine Workers of America,* 344 F.Supp. 17, 38 (D.D.C.1972).

The actions of the IEB have not been challenged on due process grounds and the Court upon review of the record concludes that that is not an issue here. Section 411(a)(5)(C) of the Act mandates "a reasonable time to prepare . . . defense" and "a full and fair hearing" for union members. As interpreted "this guarantee requires the charging party to provide *some evidence* at the disciplinary hearing to support the charges made." (Emphasis added.) *Boilermakers v. Hardeman,* 401 U.S. 233 at 246, 91 S.Ct. 609 at 617, 28 L.Ed.2d 10 (1971). Lamb had ample opportunity to prepare his defense. He does not claim otherwise. There was persuasive and sufficient evidence before the various IEB meetings of Lamb's insubordination and continued refusal to comply with the expense accounting rules. In reviewing union disciplinary proceedings our Circuit has noted: "There is no requirement of 'substantial evidence'. The limited judicial role staked out by the Supreme Court for these cases

leads us to affirm the conclusion of the district court that the union met its burden of producing *some evidence* to support the charges . . . ." (Emphasis added.) *Ritz v. O'Donnell*, 566 F.2d 731, 737 (D.C. Cir. 1977).

On basis of the material undisputed facts, the defendants are entitled to summary judgment as a matter of law. In *Ritz*, our Circuit Court upheld the trial court's entry of summary judgment and refused to enjoin enforcement of disciplinary sanctions because a union member disobeyed and failed to comply with an executive board order to account for certain funds and file reports as required by law. Ritz claimed that retaliatory disciplinary action was instituted because of his opposition to the union's leadership as does Lamb in this proceeding. Ritz also claimed that he was denied a full and fair hearing. Lamb does not make that assertion. The basic union charge against Ritz was that he failed to file required financial information. As to that Judge Harold Leventhal remarked at page 737 that:

> Moreover, the courts are subject to restraint, to the clear import of *Boilermakers* that in this field of law the courts have a distinctly narrower supervisory role over union disciplinary proceedings than over agency proceedings, and *a fortiori* than criminal proceedings. We must scrutinize the procedures, but intervene only if there has been a breach of fundamental fairness.

The plaintiffs have failed to demonstrate that such breach occurred here.

Lamb did eventually comply with the Union's requirements. However, the Court cannot conclude from the record that the action of either President Miller or the IEB was based on a lack of evidence or that under the circumstances the defendants' actions were unreasonable or unwarranted. Lamb had more than ample opportunity to comply.

While the defendants challenge the legal basis of the cause of action asserted by the plaintiff Anthony Bumbico, absent any factual finding in support of Floyd Lamb's allegations, the claim of his co-plaintiff must fail.

The defendants' motion for summary judgment is granted.