Floyd H. LAMB, et al., Appellants,

v.

Arnold MILLER, President, United Mine Workers, et al.

No. 80–1511.

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1981.

Decided July 13, 1981.

Rehearing Denied Aug. 31, 1981.

Paul Alan Levy, Washington, D. C., with whom Alan B. Morrison and James R. Klimaski, Washington, D. C., were on the brief for appellants. Katharyn M. Marks, Washington, D. C., also entered an appearance, for appellants.

Isaac N. Groner, Washington, D. C., with whom Harrison Combs and Peter Mitchell, Washington, D. C., were on the brief, for appellees.

Before ROBB, Circuit Judge, SWYGERT *, Senior Circuit Judge, and GINSBURG, Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge SWYGERT.

SWYGERT, Senior Circuit Judge:

This action arises from two separate suspensions and removals of Floyd H. Lamb from the office of representative from District 6 of the International Executive Board of the United Mine Workers of America (IEB).[1] The IEB declared the disciplinary

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1976). At the time of oral argument, Judge Swygert was a circuit judge in active service; he assumed senior status on July 1, 1981.

1. The IEB consists of the Union's International President, Vice-President, Secretary-Treasurer,

actions against Lamb were the result of his failure to comply with union rules requiring him to account for the expenditure of union funds in the performance of his duties.[2] Lamb contended in his complaint against the Union and its then-president, Arnold Miller, that the assigned grounds were merely pretextual and that the true reason for the actions was Lamb's continued vocal opposition to Miller's leadership of the Union. The complaint therefore alleged that Miller and the IEB had violated his rights under Title I of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411.[3] The district court granted summary judgment for defendants. *Lamb v. Miller*, 487 F.Supp. 1188 (D.D.C.1980). We reverse, for there is a sufficient factual dispute relating to the motivation of President Miller and the IEB in removing Lamb to require a full trial.

The facts may be briefly summarized for all of the parties agree that Lamb violated the Union's rules with respect to accounting for expenses and cash advances.[4] The only dispute that concerns us here is whether those violations were the cause of Lamb's dismissal or merely a pretext for it.

Lamb was elected an International Representative by members of District 6 for a four-year term beginning in January 1977. During his first few months in office, Lamb submitted vouchers covering his expenses, for which he was reimbursed. He did not again submit complete expense vouchers until October 23, 1979, even though in January and February 1978 he received a total of $1,300 in cash advances. At a meeting on August 11, 1978, Miller directed Lamb to document properly his expenses, including the advances, and warned him that he faced suspension if he failed to comply by the next IEB meeting. When Lamb did not turn in any vouchers at the IEB meeting on August 28, Miller announced he was suspending Lamb for "insubordination."[5] After some discussion, during which Lamb explained that he did not think he needed to submit the vouchers since he had paid for union expenses out of his own pocket in an amount greater than the cash advances, the IEB sustained the suspension by a vote of 18 to 6. Because Lamb had still failed to comply,[6] Miller removed him from office on November 9. The IEB unanimously approved Miller's action at its meeting on November 28, 1978, which Lamb attended.

Lamb won the special election called to fill the vacancy for District 6 on March 1, 1979. Miller again suspended him on April 11. The IEB approved the second suspension on July 25. Miller removed Lamb from

---

and one International Representative from each of the Union's districts.

2. The Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 *et seq.*, requires labor organizations to maintain proper accounting of their funds through the filing of detailed reports covering salaries, expenses, and other disbursements. The Act provides various penalties for violation of these requirements. In addition, the union is subject to an injunction to maintain such records. *Hodgson v. United Mine Workers of America*, 344 F.Supp. 17, 38 (D.D.C.1972). The union therefore provides in its constitution and its rules procedures for accounting for the expenditures of union funds, so that the union may comply with its reporting requirements.

3. Lamb was joined as plaintiff in the complaint by a union member, Anthony Bumbico, who alleged that defendants' actions had chilled his First Amendment rights under Title I.

4. While Lamb agrees he did not comply with the rules, he argues that the rules were unclear at the time and that he did not know he was violating them.

5. Miller told Lamb at the IEB meeting, "You had ample time, in my judgment, to get those records up to date. You were specifically directed. The other remarks [made by Lamb in explaining his earlier failure to submit the vouchers] are not relevant to an act of insubordination. I directed you to do it, and you didn't do it. And that is why I am suspending you."

6. Lamb had submitted some incomplete documentation on October 20, which Miller told him three days later was inadequate.

office again on October 16, 1979. A week later, Lamb finally submitted expenses vouchers that were approved by the Union. On October 29, 1979, the IEB upheld Lamb's removal from office.

The district court, in granting defendants' motion for summary judgment, held that no genuine issue of material fact existed concerning the motives of Miller and the IEB in dismissing Lamb. The court stated that Lamb had not presented any evidence to support his contention that his dismissal was politically motivated. It held the policy disagreements between Lamb and Miller "were not unique or unusual. They are a part of the day-to-day operation of the union." *Lamb v. Miller*, 487 F.Supp. 1188, 1192 (D.D.C.1980).

While there is substantial evidence in the record of Lamb's violations of the Union's accounting rules, he presented enough evidence of possible impermissible motives to withstand a motion for summary judgment. Lamb was an organizer in 1974 of the Miner's Action Committee, which publicly opposed many of the Miller administration's actions. He supported the candidacy of Leroy Patterson, who ran against Miller in the previous election for International President. In early 1978 he opposed during the ratification process the contract that had been negotiated by Miller, and during the summer of 1978 he spoke out in favor of the campaign to recall President Miller. Miller knew about this opposition activity. At the meeting of August 11, for example, when Miller first told Lamb he was violating the accounting rules, Miller presented Lamb with press clippings concerning the latter's dissidence and said that he would not tolerate such challenges to his authority. Lamb

also presented some evidence that two other union officers had failed to justify their use of the union's credit card.[7]

■ Title I of the Labor-Management Reporting and Disclosure Act was intended to create effective democracy within labor unions and to make accountable previously untouchable union leaders.[8] "The pervading premise . . . is that there should be full and active participation of the rank-and-file in the affairs of the union." *American Federation of Musicians v. Wittstein*, 379 U.S. 171, 182–83, 85 S.Ct. 300, 306–07, 13 L.Ed.2d 214 (1964). Title I of the Act therefore establishes a "Bill of Rights" that ensures, for example, a union member's right of free speech and right to sue or otherwise participate in legal proceedings against the union.[9] A union official may not be dismissed for exercising these rights.

■ When there is some evidence that the reason for removal from office was permissible and some evidence that the reason was impermissible, the question whether protected activities were a cause for the removal must be resolved by a trier of fact. *Bradford v. Textile Workers of America, Local 1093*, 563 F.2d 1138, 1143 (4th Cir. 1977). The motivation for the dismissal is thus a question of fact. *See Price v. United Mine Workers of America*, 376 F.Supp. 1015, 1021 (D.D.C.1974), *aff'd without opinion*, 515 F.2d 1018 (D.C.Cir.1975). In this case, Miller and the IEB might have removed Lamb for his inadequate accounting for expenses, but they might also have dismissed him for his continued opposition to their policies. Summary judgment is improper when such a dispute of material fact exists.[10] We therefore reverse the judg-

---

7. Defendants state that these contentions of disparate treatment are incorrect, but that is, of course, precisely the type of factual dispute that cannot be resolved on summary judgment.

8. S.Rep. No. 187, 86th Cong., 1st Sess. (1959), U.S.Code Cong. & Admin.News 1959, p. 2318.

9. *See, e. g.*, 29 U.S.C. §§ 411(a)(2), 411(a)(4).

10. *National Assoc. of Government Employees v. Campbell*, 593 F.2d 1023 (D.C.Cir.1978).

ment of the district court and remand this case for a trial on the merits.

*Reversed and Remanded.*

ON PETITION FOR REHEARING

PER CURIAM.

On consideration of appellants' petition for rehearing, it is

ORDERED by the Court that the aforesaid petition for rehearing is denied.

*Ritz v. O'Donnell,* 566 F.2d 731 (D.C.Cir. 1977), does not control this controversy. The majority in *Ritz* affirmed a summary judgment for the union because the plaintiff "failed to make even a minimal showing that the disciplinary proceedings were instituted as a retaliatory measure." 566 F.2d at 736. Here, appellant Lamb made the requisite threshold showing by adducing some evidence that the union made it difficult for him to supply the financial accounting it demanded. For example, the union did not respond to Lamb's letter asking for the specific dates of airline ticket charges, and union officials made no attempt to assist Lamb in compiling other information needed to meet the union's directive. Accordingly, we adhere to our determination that summary adjudication is not appropriate in this case.