Leroy SCHOEN, Phillip W. Petri, Hans K. Binder, James E. Rohde, Richard A. Strampp, James J. Vavra, Michael F. Dosemagen, Jerry E. Kubista, Johann Lohberger, and David A. Johnson, Plaintiffs,

v.

LODGE 34, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS and American Motors Corporation, Defendants.

No. 83–C–693.

United States District Court,
E.D. Wisconsin.

July 6, 1984.

Charne, Glassner, Tehan, Clancy & Taitelman by Robert B. Corris, Milwaukee, Wis., for plaintiffs.

Schwartz, Weber & Tofte by Mark F. Nielsen, Racine, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

This action was brought under § 301 of the National Labor Relations Act, 29 U.S.C. § 185. The plaintiffs, 11 members of Lodge 34, International Association of Machinists and Aerospace Workers (union), allege that the union violated its duty to represent them fairly. By a stipulated settlement agreement reached in October 1983, defendant American Motors Company (AMC) was dismissed from the lawsuit. This court's jurisdiction is based on 28 U.S.C. § 1331. The parties have now filed cross-motions for summary judgment. The plaintiffs' motion will be granted.

## BACKGROUND

The plaintiffs are employed by AMC at the company's Kenosha, Wisconsin, plant. Before layoffs began in 1981, they worked in the plant's forge die section, department 855, which then included approximately 30 employees. The union also represented approximately 200 workers in the plant's tool die section, department 859. In the summer of 1981, AMC notified the union shop committee that it planned to lay off many department 855 workers and perhaps phase out that department altogether. Department 859, however, would be expanded.

The union shop committee informed Mr. John Serpe, Lodge 34's Business Representative, of the planned layoffs. Under the local's by-laws, the Business Representative had the duty to investigate and resolve employee grievances. Originally, AMC intended to hire new workers for department 859 off the street. However, Mr. Serpe succeeded in persuading AMC's labor relations officer to permit department 855 workers to transfer into department 859. The collective bargaining agreement then in effect contained the following provisions with respect to transfers:

> In the matter of permanent transfers between the Forge Die Department and Tool and Die Departments covered by this Agreement, it is understood and

agreed that an employee can be transferred from one department to another. Such transfers will be subject to mutual agreement between the Company, Union, and the employee. (¶ 83)

Employees permanently transferred between departments, in accordance with above, shall transfer their present established seniority to the department to which they may be transferred. (¶ 84)

When department 859 workers learned of the possibly large transfers from department 855, they objected to the retention of departmental seniority by the new workers; departmental seniority determined job security in case of layoffs. Mr. Serpe concluded that he did not have the authority to decide the seniority issue, and, therefore, he put the issue to a vote of department 859 members. Because of the several shifts at which the members of department 859 worked, two special meetings were held on November 20, 1981. Not surprisingly, the department 859 employees voted 151 to 9, with 5 abstentions, to deny departmental seniority to transferees from department 855. The eleven plaintiffs were hired gradually between December 8, 1981, and May 23, 1983. Consistent with the union's decision, each was given the status of a new employee for layoff purposes.

On January 26, 1982, the first transferees into department 859, plaintiffs Schoen and Petri, filed grievances under the collective bargaining agreement protesting their transfer without seniority. On July 29, 1982, the union and AMC agreed that the grievance procedure should be considered exhausted before the parties resorted to arbitration. AMC did not consider the matter arbitrable since it was not the cause of the grievance. AMC has consistently stated its willingness to grant the plaintiffs departmental seniority if the union agrees. The union did not wish to proceed to arbitration because it would be forced to challenge its own decision. Although all of the plaintiffs have since filed grievances, the union had let it be known that no relief was to be expected.

On September 15, 1982, Messrs. Schoen and Petri filed an unfair labor practice charge against the union and AMC with the National Labor Relations Board (NLRB). On about October 1, 1982, the NLRB Acting Regional Director refused to prosecute the charge. The NLRB Appeals Board affirmed the decision of the Acting Regional Director on about November 29, 1982.

In late October 1982, Scott Elmer, one of the two union shop committeemen in department 855, sent a petition signed by 19 department 855 workers to William Winpisinger, president of the union, in Washington DC. The petition complained that the union board of department 859 had treated transferees from department 855 unfairly. In a letter accompanying the petition, Mr. Elmer complained specifically that department 855 members transferred into department 859 were denied their seniority. Former department 855 workers were aware of Mr. Elmer's efforts to appeal to high union authorities.

On October 29, 1982, George Poulin of the union's Washington D.C. office referred the Elmer petition and letter to Tom Ducy, an official at the union's Des Plaines, Illinois, office "[i]asmuch as this falls within your area of administrative responsibilities ..." Mr. Ducy referred the matter to Mr. Serpe in Kenosha "[s]ince AMC and Local 34 are within your area of administrative responsibility ...." Mr. Ducy further stated "I expect you and the Committees of Dept. 859 and Dept. 855 to address this seniority problem as a priority issue." In a letter dated November 29, 1982, Mr. Elmer pointed out to Mr. Poulin that Mr. Serpe had never deviated from his original view that he was powerless to act on the seniority question.

By a letter dated December 1, 1982, addressed to Mr. Poulin, Mr. Elmer again complained that transferees into department 859 were being denied their seniority. Mr. Poulin again referred the letter to Mr. Ducy who again referred it to Mr. Serpe, "requesting that you contact Brother Elmer and handle this matter to a conclusion." In a letter dated February 10, 1983,

addressed to Mr. Serpe, Mr. Ducy referred to another recent letter from Mr. Elmer and stated "Brother Elmer is and has been aware that a majority vote of the affected AMC employees has determined the disposition of the subject complaint, albeit not to his satisfaction." Mr. Ducy further stated that he considered the matter closed. By a letter dated February 14, 1983, addressed to Mr. Elmer, Mr. Serpe summarized the circumstances surrounding the decision to deny department 855 members departmental seniority upon transfer and declared the issue closed. On May 25, 1983, the plaintiffs filed this action.

## STATUTE OF LIMITATIONS

The defendant contends that it is entitled to summary judgment because the plaintiffs' action is barred by the statute of limitations. In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that a claim based on a union's breach of its duty of fair representation must be brought within six months after the action has accrued. The defendants argue that the plaintiffs' action accrued on July 29, 1982, when AMC and the union determined that Mr. Schoen's and Mr. Petri's grievances were exhausted.

Because Messrs. Schoen and Petri believed their loss of seniority to be in violation of the collective bargaining agreement, it was understandable that they filed grievances under the agreement. The grievance procedure, however, was designed for the resolution of disputes between the union and management. It was inadequate in this case because the plaintiffs' claim arose from the action of the union itself. In my opinion, the plaintiffs' cause of action did not accrue on July 29, 1982, when the grievances were exhausted, but on February 14, 1983, when Mr. Serpe informed Mr. Elmer that the union considered the seniority question permanently resolved.

In *Clayton v. Automobile Workers*, 451 U.S. 679, 692, 101 S.Ct. 2088, 2097, 68 L.Ed.2d 538 (1981), the Supreme Court held that exhaustion of internal union remedies is a prerequisite to an action for failure to represent where "internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance ...." See also *Miller v. General Motors Corp.*, 675 F.2d 146, 148 (7th Cir.1982). The defendant does not dispute AMC's willingness to grant the plaintiffs departmental seniority. Thus, Mr. Elmer's appeal to the union, if successful, would have provided complete relief. Mr. Elmer's three month long correspondence with union officials belies any suggestion that the original decision was somehow irrevocable. It is not significant that Mr. Elmer, rather than any of the plaintiffs, pursued the internal union appeal. Mr. Elmer was the union committeeman for department 855, and in a sense he represented all of the plaintiffs.

Where the only obstacle to complete relief was the union, the plaintiffs, or their department committeeman, were compelled by the *Clayton* decision to seek relief within the union before bringing a federal suit. This action was timely filed within six months after Mr. Elmer was informed that the union had rejected his appeal. Exhaustion of appeals by plaintiffs who had not yet been transferred at the time of Mr. Elmer's appeal is not required because the union's position with regard to seniority is such that another complainant "could not hope to obtain a fair hearing on his claim; ...." *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095.

## FAILURE TO REPRESENT

The plaintiffs contend that the union failed in its duty to represent them when it resolved the issue of the plaintiffs' departmental seniority by means of a vote of department 859 members, a group whose interests were directly affected. The defendant argues that the vote was a reasonable means of resolving a difficult dispute. A union may resolve a conflict between members on any reasonable basis consistent with its duty of fair representation. The essence of the duty of fair representation is that "the union cannot carry

out the majority will at the expense of the minority if to do so would be arbitrary, discriminatory or in bad faith .... " *Alvey v. General Electric*, 622 F.2d 1279, 1289 (7th Cir.1980).

When employees are transferred into a new department, there are two possible results. If the transferees retain their seniority, rankings in the new department must be revised, frustrating the expectations of veteran department employees. If the transferees are stripped of their departmental seniority, they potentially lose rights earned through years of employment with the same employer. However the union resolves the conflict, it must either damage the expectations of the veterans or the rights of the transferees.

■ Paragraph 83 of the collective bargaining agreement permits transfer between the departments when the employer, the employee and the union agree. Paragraph 84 provides that a transferred employee retains his seniority. From the union's point of view, the purpose of ¶ 83 was presumably to benefit members whose interests might be served by transfer. A transfer is clearly in the interest of a member whose alternative is an indefinite layoff. While the union is given a veto power over transfers, its use of the veto is subject to its duty of fair representation.

Paragraphs 83 and 84 should be interpreted, in my opinion, as a commitment by the union to resolve in favor of transferees the inevitable conflict which arises when members are transferred from one department into another. I believe that the defendant's interpretation of ¶¶ 83 and 84, which would permit the union to exercise its veto power over transfers against the interests of those for whose benefit the transfer provision was intended, would, absent exceptional circumstances, be unreasonable and a breach of the union's duty of fair representation. The violation is particularly egregious where members are denied the benefit of ¶ 83 not for any broad reasons of union strategy or policy, but purely because transfer would be disadvantageous to other members.

In *Barton Brands v. NLRB*, 529 F.2d 793 (7th Cir.1976), Barton bought Glencoe, a distilling company. Barton's 200 employees voted to "dovetail" their seniority with that of the 12 Glencoe employees so that Barton employees would be eligible for transfers to a new facility which Barton intended to build on the old Glencoe site. After two years, it had become clear that the new plant would not be built. Acting under pressure from the membership, the union leadership negotiated a new agreement with Barton under which former Glencoe employees were placed behind Barton employees for seniority purposes. The Court of Appeals for the Seventh Circuit held that, by stripping the former Glencoe employees of their seniority at the urging of affected Barton employees, the union had acted arbitrarily and violated its duty of fair representation:

> The record suggests that the Union acted solely on grounds of political expediency in reducing the former Glencoe employees' seniority. While a union may make seniority decisions within "a wide range of reasonableness ... in serving the [interests of the] unit it represents." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, [686] 97 L.Ed. 1048 (1950), such decisions may not be made *solely* for the benefit of a stronger, more politically favored group over a minority group. To allow such arbitrary decision-making is contrary to the union's duty of fair representation which compensates employees for the opportunity to bargain for themselves which they lost when the union became the exclusive bargaining representative for the unit.

*Barton Brands*, 529 F.2d at 798–99.

The principles cited by the court in *Barton* apply with even greater force in the case at bar. As in *Barton*, the decision to deny seniority was one which ignored the minority's interest. Unlike the excluded employees in *Barton*, however, the transferees from department 855 had earned their seniority in the service of the same employer while covered by the same collective bargaining agreement. Moreover,

**198**

¶¶ 83 and 84 of the agreement expressly provided that transferred employees would retain their "present established seniority."

The cases relied upon by the defendant are not applicable here. In *Ford Motor v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the Supreme Court upheld a 1946 collective bargaining agreement provision which gave World War II veterans hired as new employees seniority credit for military service. Among the more obvious differences between *Huffman* and the case at bar are the strong public policy considerations at work in *Huffman* and the relative lack of decision-making power in the favored group in that case. *Brown v. Truck Drivers*, 292 F.Supp. 125 (D.Md.1968) is also inapposite. The competing groups in *Brown* had acquired their seniority under separate collective bargaining agreements while working for different employers.

Paragraphs 83 and 84 allow members to transfer from one department into another, retaining their seniority. The defendant argues that the requirement that the union agree to any such transfer means that transfer need only be allowed at the union's "discretion." In my view, the union's duty of fair representation limits any "discretion" it might otherwise claim to deprive a member (who is faced with loss of his employment) of his right to transfer under ¶ 83. While there may be some other reasons which would justify the union's exercise of its veto power over transfers, the inevitable disappointment of veteran department workers' expectations cannot be one under the terms of the relevant collective bargaining agreement.

Plaintiffs' counsel is requested to prepare a proposed order for judgment consistent with the foregoing decision. Such proposed order should be presented to defendant's counsel for examination before being presented to the court for signature.

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the plaintiffs' motion for summary judgment be and hereby is granted.