**Frederick BOROWIEC, Leo W. Dube, Arthur M. Dupre, Alfred J. Duval, Theodore Rogalski, Raymond Serewicz, and Alexander Sledzieski, Plaintiffs,**

v.

**LOCAL NO. 1570 OF the INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS OF AMERICA, et al., Defendants.**

**Civ. A. No. 80–334–N.**

United States District Court, D. Massachusetts.

Jan. 16, 1986.

Robert L. Nowak, Chicopee, Mass., for plaintiffs.

Warren H. Pyle, Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., for defendants.

## ORDER

DAVID S. NELSON, District Judge.

This is an action by several members of Local 1570 of the International Brotherhood of Boilermakers, Ironship Builders, Blacksmiths, Forgers and Helpers (Local 1570 and the International) who were employed by the Moore Company (Company) and assigned to the Company's plant 2 which closed in 1979. Plaintiffs have brought this action against Local 1570, its president, Kevin Szczygiel, the International, and its International representative, Benjamin Miller. Plaintiffs allege that Local 1570 breached its duty of fair representation by failing to seek the merger or dovetailing [1] of the seniority lists of the closed plant with the remaining plants.

Plaintiffs originally filed this action in the Superior Court of Hampden County on January 30, 1980. Upon removing this action to federal court, the defendants moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(7) for failure to join the Company as a party to this action. This court denied the defendants' motion on March 22, 1982.

Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56(a). The plaintiffs have opposed this motion and have filed a cross motion for summary judgment.

The following material facts are not in dispute. Local 1570 is the collective bargaining representative of the employees of the Company at its five plants in Western Massachusetts. The collective bargaining agreement effective from August 23, 1976 to August 23, 1979 provided for plant-wide seniority for the purposes of lay-offs and recalls and Company-wide seniority for the purpose of benefits. The collective bargaining agreement provided in pertinent part:

## ARTICLE XIV

### SENIORITY

In the event of an increase or decrease in the working force, seniority shall be based upon

(1) Continuous service and

(2) ability to perform the work and shall be upon a plant-wide basis within the bargaining unit.

## ARTICLE XV

### BIDDING–SHIFT PREFERENCE—

### LAYOFFS—CUTBACKS

. . . . .

It is agreed that in laying off employees, length of service shall be the deciding factor, provided that the employee can satisfactorily do the job that remains open ... layoffs or recalls are on a plant-wide seniority basis.

. . . . .

Employees on layoff will be given preference, in line with seniority, on recall to openings in other plants within the bargaining unit. An employee recalled to another plant will be considered a new employee in that plant for purposes of Union plant seniority, but will retain Company seniority.

Under the seniority system for lay-offs and recalls established by the above provision, a laid-off employee who accepted work in another plant would retain seniority in the original plant until he was offered recall to that plant. Under these circumstances the employee would begin work in the new plant without seniority. In the event of voluntary transfer to another

---

**1.** This system for consolidating seniority rosters has been used in a number of company mergers. It involves the compiling of a single roster with workers listed in the order of their date of hire. See *Truck Drivers and Helpers, Local Union 568 v. N.L.R.B.,* 379 F.2d 137, 143 (D.C.Cir. 1967) for a detailed description and variations on this theme.

plant, the employee would lose seniority in his original plant and begin work in the new plant without seniority. (Szczygiel Affidavit ¶ 2; Plaintiffs' Memorandum in Support of Motion at 3).

In late 1978, the Company decided that it would close plant 2. (Szczygiel Affidavit ¶ 6). On January 10, 1979 the Local 1570 and the Company entered into an agreement concerning seniority rules governing all cutbacks and recalls occurring in plants 1 and 2. That agreement provided in pertinent part:

1. The Plant # 1 seniority list as a group will be considered most senior.

2. Plant # 2 seniority list will remain intact and be considered for all Plant # 1 recalls after the Plant # 1 seniority list. In the event of cutbacks or layoffs the Plant # 2 seniority list will be used before Plant # 1 list is affected.

This agreement was effective for the duration of the collective bargaining agreement and expired on August 23, 1979.

On December 3, 1979, a regular membership meeting of Local 1570 was held. Benjamin Miller told the members that the collective bargaining agreement "clearly" provided for endtailing in the event of a plant closing. This procedure would place the employees at the bottom of the seniority list at the plant to which they were transferred. No provision in the collective bargaining agreement specifically refers to "plant closings."

Defendants state that on February 14, 1979 the Recording Secretary of Local 1570 notified the membership that the negotiating committee (Committee) was accepting proposals for a contract to replace the existing collective bargaining agreement. On or about February 14, 1979, Alfred Duval submitted a proposed contract clause. (Szczygiel Affidavit ¶ 9; Complaint ¶ 23). The proposal provided:

Whenever a layoff occurs the employee laid off may replace the least junior of the employees with less plant seniority than the laid off employee in any classification or department for which he is

qualified in the same plant; if the laid off employee is unable to replace within the same plant, he may then replace the least junior of the employees with less Company seniority than the laid off employee in any classification or department for which he is qualified in any other plant.

The usual practice of Local 1570 was for the Committee to submit all such proposals directly to the Company for consideration during the contract renegotiation sessions. (Szczygiel Affidavit ¶ 10). Local president Szczygiel recognized the proposal's controversial nature and requested that five members from plant 1 petition for a special meeting of Local 1570 to vote on Duval's proposal. (Szczygiel Affidavit ¶ 10; Plaintiff's Memorandum in Support of Motion at 9). On February 26, 1979 Szczygiel received such a request for a special meeting and a meeting was scheduled pursuant to the Local's by-laws.

On March 4, 1979 at the regular membership meeting of the Local, Szczygiel announced that a special meeting would be held on March 11, 1979 and that a vote would be held on Duval's proposal at that time. (Szczygiel Affidavit ¶ 11; Complaint ¶ 25). Defendants posted notices of the special meeting on the designated union bulletin boards at each plant. The notice provided that "a SECRET BALLOT vote will be taken on a proposal submitted to the negotiating committee combining all Local 1570 members in all plants to One SENIORITY LIST." (Emphasis original). A secret ballot vote was held on March 11, 1979. The majority of those present at the meeting voted against the proposed clause by a vote of 126 to 41. (Complaint ¶ 25; Szczygiel Affidavit ¶ 13).

On March 26, 1979, the Committee submitted a proposal concerning seniority in the event of the permanent closing of plant 2. The proposal provided:

In the event of the permanent closing of plant # 2, the plant # 2 seniority list in its entirety will be established behind the plant # 1 seniority list in its exact same order as it was in plant # 2.

At a meeting held on April 17, 1979 the Company submitted a proposal to the Committee providing for a merged seniority list. The proposal was rejected by the Committee. (Szczygiel Affidavit ¶ 15). On May 11, 1979 the Company submitted another proposal which would have provided for a partial merging of the seniority lists in the event of a plant closing. This proposal was also rejected by the Committee.

The Committee and the Company reached agreement on the following language for the collective bargaining agreement for 1979–1982:

> In the event of an individual plant closing, the seniority of the employee in the closed plant who is transferred to another plant will be placed at the bottom of the new plant in the same order that existed in the closed plant.

In the fall of 1979 the plaintiffs retained Attorney Robert Nowak to assist them with their dispute. On October 9, 1979 Nowak wrote to Szczygiel requesting that the Local re-open the contract negotiations to change the agreement to include a merged seniority list. On October 31, 1979 Szczygiel wrote to Nowak stating that he and Miller had reviewed all the aspects of the plaintiffs' complaint and would "abide by the wishes of the majority of the Local." On November 13, 1979 Nowak wrote Harold J. Buoy, the International President, requesting that he re-open negotiations to merge the seniority lists and to allow the members to have access to certain information. The plaintiffs wrote a similar letter to Buoy on November 15, 1979. On January 11, 1980, after an investigation, the International wrote to Mr. Nowak stating that the International agreed with the action taken by the Local and that therefore it "cannot take any other action in this matter."

A. Applicability of *DelCostello v. International Brotherhood of Teamsters*

■ On July 1, 1983 this court requested briefing on the applicability of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to the instant proceedings. *DelCostello* held that the six-month limitations period of the National Labor Relations Act, § 10(b), as amended, 29 U.S. C.A. § 160(b), applied to an employee's suit against his union for breach of its duty of fair representation. *Id.*, 103 S.Ct. at 2293–94. The defendants would apply *DelCostello* retroactively. As a result, they contend that the plaintiffs' cause of action accrued more than six months before suit was filed on January 30, 1980. Having carefully considered the parties' submissions, I find that *DelCostello* can and should be applied retroactively. Plaintiffs' claims, however, should not be dismissed.

■ The general rule in federal courts is that judicial decisions are to be applied retroactively. *Graves v. Smith's Transfer Corp.*, 736 F.2d 819, 821 (1st Cir.1984). The First Circuit has analyzed *DelCostello* in detail and has found that it must be applied retroactively. *See Scaglione v. Communications Workers of America*, 759 F.2d 201 (1st Cir.1985), *aff'd* 586 F.Supp. 1018 (D.Mass.1984).

■ To determine whether the *DelCostello* statute of limitations has run in this case, the court must first determine when plaintiffs' cause of action accrued. A cause of action for a breach of the duty of fair representation arises when the plaintiff "had notice of alleged union wrongdoing." *McNutt v. Airco Industrial Gases Division*, 687 F.2d 539, 543 (1st Cir.1981). Wrongdoing constituting a breach of duty is defined as arbitrary, discriminatory or bad faith conduct. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Subsequent interpretations have established that proof of mere negligence or errors of judgment on the part of the union is insufficient. *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635 (2d Cir.1985).

■ On the question of when plaintiffs had knowledge of the alleged wrongdoing, the parties agree that plaintiffs and their counsel sent communications on October 9, November 13, and November 15, 1979 to

Local officials and the International in an attempt to resolve this dispute concerning the merger of the seniority lists. In the November 15, 1979 letter to the International president, noted above, the plaintiffs appealed to him to "straighten" this "mess" out within Local 1570. The new collective bargaining agreement became effective on August 23, 1979. This suit was filed on January 30, 1980.

The defendants contend that the March 11, 1979 vote was enough to put the plaintiffs on notice of Local 1570's failure to represent them fairly, such that their cause of action would have accrued on that date. This court disagrees. Viewing the facts most favorably for the plaintiffs, it is possible to infer that they did not have the necessary knowledge of a breach until sometime after the March 11, 1979 meeting. Plaintiffs' correspondence with union officials, subsequent investigations conducted by the Local and International, and the Company's own merger proposals after this date belief any suggestion that the March 11, 1979 vote was somehow irrevocable. *See Schoen v. Lodge 34, Intern. Ass'n of Machinists*, 590 F.Supp. 193, 196 (E.D.Wis.1984). In order to come within the six-month limitations period, plaintiffs would have had to remain hopeful regarding their proposal to merge the seniority lists until July 30, 1979. Whether they did have an expectation involves an inquiry into the state of mind of the plaintiffs such that summary judgment is inappropriate on that issue. *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Given the material dispute of fact between the parties as to when plaintiffs became aware that the Local would not dovetail the seniority lists or should have become aware of the Local's breach of duty to represent, the parties' motions for summary judgment with respect to this issue must be denied.

■ A second reason prevents this court from determining as a matter of law that the plaintiffs commenced this action within the six-month period. One of the aspects of the defendants' alleged breach of its duty of representation was its failure to process the plaintiffs' appeals after the March 11, 1979 meeting. This part of the alleged breach necessarily took place after the March 11, 1979 vote and less than six months before suit against the defendants was filed.

Finally, the defendants argue that this action is barred by *Clayton v. United Automobile Workers*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In *Clayton*, the Supreme Court held that exhaustion of internal union remedies is a prerequisite to an action for failure to represent where the "internal union appeals procedure can result in either complete relief to an aggrieved employee or reactivation of his grievance." *Id.* at 692, 101 S.Ct. at 2097. The defendants contend that after March 11, 1979, the union appeals procedure would not have afforded the plaintiffs complete relief, so that their cause of action could have accrued as of March 11, more than six months before this suit was filed. This court disagrees. The defendants do not dispute the Company's willingness to merge the seniority lists after the March 11, 1979 vote. Thus, plaintiffs' appeals to the union during this period, if successful, would have provided the complete relief requested.

In sum, the court finds that plaintiffs' claims are not time-barred under *DelCostello*.

### B. *Motions for Summary Judgment*

■ The duty of fair representation has been described as the union's obligation, as the chosen representative of the employees, to make an honest effort to serve the interests of all employees without hostility to any. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1952); *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 198, 202–04, 65 S.Ct. 226, 232–33, 89 L.Ed. 173 (1944). This includes a duty in collective bargaining with the employer to represent minority union members "without hostile discrimination, fairly, impartially, and in good faith." *Steele*, 323 U.S. at 204, 65 S.Ct. at

233. Moreover, the union is required to consider the requests of these members and give them "notice of and opportunity for hearing upon its proposed action." *Id.*

With this in mind, the court is aware that a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. *Huffman*, 345 U.S. at 338, 73 S.Ct. at 686. Moreover, as long as the union acts in good faith "courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular advantage." *Cook v. Pan American World Airways*, 771 F.2d at 645 (quoting *Capobianco v. Brink's Inc.*, 543 F.Supp. 971, 975 (E.D.N.Y.1982), *aff'd mem.*, 722 F.2d 727 (2d Cir.1983).

Plaintiffs assert that the defendants intentionally withheld information concerning the closing of plant 2 to the detriment of the employees. Plaintiffs also assert that Article XV of the collective bargaining agreement had always been interpreted by the employees as applying only to work fluctuations and temporary shutdowns. Plaintiffs contend that the negotiating committee had little interest in protecting plant 2 employees and that Szczygiel was open about his favoritism for plant 1 employees. Plaintiffs further contend that the Committee failed to weigh and consider the merits of Duval's proposal. In fact, the Local leadership admits that it never debated or formally discussed the merits of the proposal. (Szczygiel Int. # 19). Finally, they assert that Szczygiel was aware of the result of a possible referendum vote and departed from the usual practice by submitting the proposal to a binding vote.

The defendants dispute the plaintiffs' version of these facts. They suggest that Szczygiel personally favored the proposal, but accepted the endtail scheme as the mandate of the union. Moreover, the defendants argue that the plant 2 closing was widely discussed and denies any withholding of important information by Local officials. Defendants also contend that it had been the longstanding practice of the Local to endtail employees transferred to another plant following layoff or otherwise. Finally, defendants assert that the choice to endtail employees was reasonable.

The questions of bias and bad faith are ones of degree. In the instant case, the allegations are sufficient concerning the bias and bad faith of the defendants; if proven, the alleged behavior would be a violation of the requirements of 29 U.S.C. § 141 *et seq.* The pleadings are insufficient, however, to warrant summary judgment on the basis of bias. *See Goodman v. Laborers' Int'l. Union of North America*, 742 F.2d 780, 783–85 (3d Cir.1984) (reversing decision of the district court where there existed a genuine issue of material fact as to the bias of the local union's trial board, precluding summary judgment).

Nor can this court as a matter of law conclude that the adoption of the endtail schemes was arbitrary as the plaintiffs suggest. This court notes that the dovetailing standard is generally accepted as an equitable and feasible solution to the problem of a merger or absorption, *see Humphrey v. Moore*, 375 U.S. 335, 347 n. 10, 84 S.Ct. 363, 371 n. 16, 11 L.Ed.2d 370 (1964), but this by no means is the only scheme available. *See, e.g., Zapp v. United Transp. Union*, 727 F.2d 617, 620 (7th Cir.1984). A material issue of fact exists as to whether the defendants were fair, provided the plant 2 employees an opportunity to be heard, and prevented a debate on the proposal.

Defendants' reliance on *Price v. Int'l. Bro. of Teamsters*, 457 F.2d 605 (3d Cir. 1972), is misplaced. In *Price* the court upheld a union's decision to dovetail seniority lists, where there had been no showing of dishonest capricious actions beyond the union's authority under the collective bargaining agreement. There, however, the record was sufficient to show that the various committees that considered the problem gave "full and protracted consideration

to the arguments of both sides." *Id.* at 611. No such showing has been made in the instant case. Moreover, that court noted that dovetailing seemed to be the most rational solution to the problem presented by the transfer of men from one terminal to another. This is the same argument advanced by the plaintiffs.

In light of the foregoing, the parties' motions for summary judgment on Count I is accordingly DENIED.

The parties next seek summary judgment on Counts II and III. In Count II plaintiffs contend that they were deprived of their right to vote and participate in the meeting in violation of 29 U.S.C. § 411(a)(1). The plaintiffs argue that the method of notice was unreasonable and in violation of the Local's By-Laws.[2] The parties agree that the defendants posted notices. Instead, plaintiffs argue that the defendants should have sent postcards to all the members to notify them of the special meeting. Plaintiffs have also argued that the defendants had a duty to inform each member of the merits of the Duval proposal.

In a related claim in Count III the plaintiffs contend that they were deprived of their right to free speech and participation in violation of 29 U.S.C. § 411(a)(2). In support of this contention plaintiffs state that the defendants deceived the membership, prevented debate, and provided insufficient information concerning the proposal to the employees before the March 11, 1979 vote. Furthermore, they claim there was little discussion of the proposal before the vote. The defendants have a rather different view of these facts. They contend that the proposal was widely discussed, that the ballot was clearly explained to the members before the vote, and that the notice concerning the special meeting and the vote was adequate.

 The role of the court is not to interpret the union's constitution. *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir.1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972). This court, however, may intervene where there is a showing that union members have been deprived of rights guaranteed by the Act. *Millinery Workers v. United Hatters*, 495 F.Supp. 60, 62 (D.Mo.1980). The right to vote in union elections is a right to a meaningful vote. *See Pawlak v. Greenawalt*, 464 F.Supp. 1265 (D.Pa.1979). Here, there exists an issue of material fact as to whether the union members were able to cast meaningful or informed votes based on the information given them, precluding summary judgment. *See Adkins v. General Motors Corp.*, 573 F.Supp. 1188 (D.Ohio 1983).

Finally, in Counts IV, V, VI and VII plaintiffs allege Benjamin Miller, individually and in his official capacity as an International representative, acted in concert to deprive the plaintiffs of fair representation of their interests and protection of their seniority rights. In support of their motion for summary judgment with respect to this claim plaintiffs contend that Miller was a contract signatory, participated in the Local's regular meetings concerning seniority, engaged in conduct which helped defeat the Duval proposal, and falsely asserted to the Company following the vote that the issue of the merged seniority list had been foreclosed by the binding referendum.

The defendants dispute these facts. They claim Miller, and the International union, were not involved directly or indirectly concerning the seniority issue.

 An international union may be held responsible for the wrongful acts of one of its locals where there is proof of actual participation in, or an actual authorization of, or ratification of such acts after knowledge thereof. *See Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217

2. Article 8, section B, of the Union's By-Laws states:
 Special meetings may be called by the President on written request of not less than five (5) members in good standing, of which *due*

*notice* shall be given. Announcement of any special meeting shall briefly outline the cause for which it is called, and *every effort shall be made* to inform all members that the same is to be held (emphasis added).

n. 6, 100 S.Ct. 410, 414 n. 6, 62 L.Ed.2d 394 (1979). There is a material dispute of fact as to the extent and nature of the International's and Miller's participation in the events leading to the March 11, 1979 vote and the negotiations that followed. The parties' motions for summary judgment must therefore be DENIED.

SO ORDERED.

