Frederick BOROWIEC, et al.,
Plaintiffs, Appellants,

v.

LOCAL NO. 1570, etc., et al.,
Defendants, Appellees.

No. 89–1162.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1989.

Decided Nov. 15, 1989.

Alan D. Sisitsky, for plaintiffs, appellants.

Steve A.J. Bukaty with whom Blake & Uhlig, P.A., Warren H. Pyle and Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., were on brief, for defendants, appellees.

Before BOWNES, Circuit Judge, ALDRICH and FLOYD R. GIBSON,* Senior Circuit Judges.

* The Honorable Floyd R. Gibson, of the Eighth Circuit, sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge.

In this case, seven members of Local 1570 of the International Brotherhood of Boilermakers, Ironship Builders, Blacksmiths, Forgers and Helpers (respectively, "the Local" and "the International") sued the Local, its President, Kevin Szczygiel, the International, and the International's Representative, Benjamin Miller, alleging breaches of the duty of fair representation under section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, and violations of free speech and assembly rights under Title I of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411. Currently before this court is the plaintiffs' appeal from the district court's grant of summary judgment to the International and Miller. We agree with the district court that there exist no genuine issues of material facts with respect to the plaintiffs' claims against these parties and, accordingly, we affirm.

## I.

At all times relevant to this case, Local 1570 was the certified collective bargaining representative for the employees of the Moore Company ("the Company"), which operated five plants in western Massachusetts. All of the plaintiffs in this case worked at the Company's Plant No. 2.

In late 1978 the Moore Company announced its plan to close Plant No. 2. The employees of that plant became concerned about whether they would retain their seniority levels if they transferred to another Moore Company plant after Plant No. 2 closed. They were told at a regular membership meeting in December 1978 that the collective bargaining agreement between the Local and the Company then in effect provided for endtailing, which is a procedure whereby employees transferred from a closed plant are placed on the bottom of the seniority list at their transferee plant. The alternative to endtailing is dovetailing, whereby the employees from the closed plant and the transferee plant are merged

into one seniority list according to their date of hire.

In February 1979, plaintiff Alfred Duval submitted a proposed contract clause providing for dovetailing to the Local's negotiating committee. The negotiating committee had recently been formed to represent the Local's interests in negotiations with the Company for a new collective bargaining agreement to become effective in August 1979 and to last through August 1982.

Local 1570's President, Kevin Szczygiel, did not follow the usual practice of submitting the proposal directly to the Company for its consideration. Rather, realizing that Duval's proposal was a matter of controversy within the Local, Szczygiel requested that five members of the Local petition for a special meeting of the Local to vote on Duval's proposal. This was done, and at the March 4, 1979 regular membership meeting of Local 1570 Szczygiel announced that a special meeting would be held on March 11 to vote on the proposal to dovetail. Local 1570 officials also posted notices of the special meeting on designated union billboards at each of the five plants. The parties dispute whether the notice given was adequate and complied with the Local's by-laws. The plaintiffs claim that Plant No. 2 was underrepresented at the vote because some members did not receive sufficient notice. They also claim that they were not given adequate opportunity to voice their concerns on the issue before the vote. In any event, the dovetail proposal was defeated at the March 11, 1979 meeting by a vote of 126 to 41.

Based on that vote, the Local's negotiating committee rejected the Company's proposals to include a clause in the new collective bargaining agreement providing for dovetailing in the event of a plant closing. The negotiating committee and the Company ultimately agreed upon endtailing and accordingly included the following provision in the 1979–1982 collective bargaining agreement: "In the event of an individual plant closing, the seniority of the employee in the closed plant who is transferred to another plant will be placed at the bottom of the new plant in the same order that existed in the closed plant."

The plaintiffs then filed this suit against Local 1570, President Szczygiel, the International, and International Representative Benjamin Miller. The plaintiffs alleged that the Local and Szczygiel breached their section 301 duties of fair representation by supporting the endtailing provision. The plaintiffs further alleged that Local 1570 and Szczygiel violated their Title I rights to vote on and participate in the Local's business by failing to provide them with adequate notice of the March 11, 1979 special voting meeting and by preventing them from expressing their views on the seniority issue. The plaintiffs claimed that the International and Miller were also liable for these violations because they actively participated in the negotiations leading up to the agreement to endtail and also participated in violating the plaintiffs' rights to vote and express their views.

The parties filed cross motions for summary judgment, and the district court denied both motions. *Borowiec v. Local 1570, International Brotherhood of Boilermakers,* 626 F.Supp. 296 (D.Mass.1986). Regarding the summary judgment motion filed by the International and Miller, the district court ruled that "[t]here is a material dispute of fact as to the extent and nature of the International's and Miller's participation in the events leading to the March 11, 1979 vote and the negotiations that followed." *Id.* at 305. After further discovery, the International and Miller jointly filed another motion for summary judgment, arguing that recent discovery demonstrated that no genuine issues existed as to their liability. The district court granted that motion without comment and also directed the entry of final judgment for the International and Miller as to the plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 54(b).

This appeal followed.

## II.

In reviewing the district court's grant of summary judgment, this court is bound by the same standard that controlled the dis-

trict court. Summary judgment is appropriate only if there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. We must view the facts in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. However, the party opposing summary judgment "may not rest upon the mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Perez de la Cruz v. Crowley Towing & Transp. Co.*, 807 F.2d 1084, 1086 (1st Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). It is important to note in this regard that the existence of *some* factual dispute will not necessarily defeat a summary judgment motion. "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law applicable to a case determines whether a particular factual dispute is material, and a court assesses the genuineness of a factual dispute by determining whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.

In *Abreen Corp. v. Laborers' Internat'l Union*, 709 F.2d 748, 757 (1st Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 702, 79 L.Ed.2d 167 (1984), we noted that "[a]n international or regional affiliate of a local union may not be liable for the local's unfair labor practices merely by virtue of its affiliation with the local." (citation omitted). A plaintiff seeking to place liability on an international for a local's allegedly illegal conduct must further show that the local acted as the international's agent or that the international independently participated in the unlawful conduct. *Id. See also Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 213–17, 100 S.Ct. 410, 412–14, 62 L.Ed.2d 394 (1979). Thus, in this case we must determine whether there exists a genuine dispute as to whether the International or Miller affirmatively participated in the Local's allegedly illegal conduct or operated in a principal-agent relationship with the Local with respect to that conduct.[1]

■ We turn, then, to a look at the plaintiffs' initial allegations. The plaintiffs' complaint alleged that Miller and the International are liable for Local 1570's conduct because the Local "is not a free agent with complete autonomy to transact its business [but] is subject to direction and control by the ... International." *Appendix* at 23. The complaint also stated that the International, through its representative, Benjamin Miller, unfairly represented the plaintiffs by playing a leading role in the negotiations leading up to the agreement to endtail rather than dovetail, persuading other members of the Local's negotiating committee to support endtailing, and doing so in bad faith and with hostility toward the plaintiffs. *Id.* at 21–23. Moreover, the complaint charged that the International, through Miller, acted in concert with Local 1570 in violating the plaintiffs' rights under Title I to vote, assemble, and freely express their views. *Id.* at 24. However, our review of the remaining record on appeal reveals that the plaintiffs have not supported these allegations with specific facts showing that there is a genuine issue for trial.

In a deposition taken in February 1981, plaintiff Arthur Dupre, who served on Local 1570's negotiating committee, discussed the circumstances surrounding the seniority issue but did not identify any representative of the International as a relevant player in the debate, except to say that

---

1. We do not in this appeal reach the underlying issue of whether the plaintiffs have actually stated a valid claim against the Local and its president. We decide only whether there is a triable issue as to whether the International or Miller participated in the Local's allegedly illegal conduct—namely, supporting the agreement to endtail and impairing the plaintiffs' rights to vote and express their views—to an extent sufficient to subject them to liability for such conduct, assuming without deciding that it was illegal.

Benjamin Miller attended some of the Local's negotiating committee meetings and stated at one of those meetings that the Local had expressed its view on the seniority issue by voting in favor of endtailing. Dupre also stated in that deposition that he had no other indication of Miller's views on the subject. *Deposition of Arthur Dupre, Appendix* at 99, 123, 144–45.

Plaintiff Duval was also deposed in early 1981. When asked what he knew of Miller, he responded only that he had called Miller for advice on achieving a favorable result on the seniority issue and that Miller had in fact encouraged him to submit the contract proposal in favor of dovetailing. Duval provided no facts indicating that Miller or any other representative of the International participated in unfair representation of his interests or violation of his rights to vote and express himself. *Deposition of Alfred Duval, Appendix* at 310–17.

In May 1986, five months after the district court denied the parties' cross motions for summary judgment, further depositions of the plaintiffs were taken. Those depositions appear to be what prompted the district court to grant the second motion for summary judgment filed by the International and Miller because there, the plaintiffs stated, in essence, that they named the International and Miller as defendants in this suit simply because of their affiliation with the Local and not because of anything they affirmatively did. Specifically, plaintiff Duval stated that he never perceived Miller as having the authority to make decisions for the Local, *Appendix* at 251; plaintiff Leon Dube stated that he sued the International only because it "didn't seem to help [him] with [his] seniority rights," *id.* at 254; plaintiff Fred Borowiec said that he sued the International because it is "affiliated" with the Local, *id.* at 256; and, plaintiff Raymond Serewicz stated generally that his complaint against the International was that it was not fair to him. *Id.* at 259.

The only other allegations set forth by the plaintiffs that concern Miller's and the International's involvement in the seniority debate are contained in an affidavit submitted by plaintiff Dupre in July 1986. There, Dupre stated that in the meetings between the Local's negotiating committee and the Company to form a new collective bargaining agreement, Benjamin Miller

> was the union's head negotiator and spokesman. Mr. Miller controlled the negotiating team throughout the negotiations. He directed the ebb and flow of proposals and counterproposals. He did all of the talking at the table on behalf of the union. Mr. Miller dominated the proceedings on our side of the table.

*Affidavit of Arthur M. Dupre, Appendix* at 307.

Even assuming that Dupre's allegations create a factual dispute that is material under these circumstances, we hold that they do not preclude summary judgment because they do not create a factual dispute that is also genuine. As explained above, the plaintiffs, including Mr. Dupre, had already been deposed when Dupre filed his affidavit and, although directly asked about the International's role in the seniority issue, failed to identify any International representative as a player, much less a leader, in the debate. In Dupre's deposition taken in 1981, Dupre attributed the proposal to endtail submitted in the contract negotiation sessions to President Szczygiel and not to Miller, stated that Duval's proposal to dovetail was never discussed among the members of the Local's negotiating committee, and stated that he (Dupre) did not know what Miller's position on the seniority issue was. *Appendix* at 126, 139, 145. We thus have difficulty reading Dupre's July 1986 statement that Miller singlehandedly negotiated the contract for the Local to legitimately claim that Miller was the primary force behind the ultimate agreement to endtail. Thus, even if Dupre meant in his 1986 affidavit to allege that Miller was the force behind the agreement to endtail, we conclude that such allegation does not create a genuine issue for trial. That is, we do not believe that a reasonable jury viewing this evidence in context could return a verdict for the plaintiffs on their unfair representation claim against the International and Miller. *See Daury v. Smith,* 842 F.2d 9, 11 (1st

Cir.1988) (stating the test for "genuineness" in summary judgment context). We feel compelled to reach this conclusion in light of Dupre's prior statements about Miller's minimal involvement and his co-plaintiffs' admissions that they had nothing specific to allege about the International's role in the seniority debate.

 The plaintiffs also rely on provisions of the International's Constitution in which the International retains substantial supervisory control over its locals; they suggest that because of this control the International is liable for the locals' conduct for all purposes. We disagree. While it is quite evident that the International does retain the power to control the locals and preempt their individual by-laws, it is also clear from the Constitution that the locals enjoy a substantial degree of autonomy in conducting their affairs, including the negotiation of collective bargaining agreements.[2] We do not believe that the fact of the International's theoretical supremacy over the Local is itself sufficient to subject the International to liability for the Local's affairs. Rather, International liability must be based on affirmative conduct undertaken by it. *See Carbon Fuel*, 444 U.S. at 217–18, 100 S.Ct. at 414; *Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 974 (2d Cir.1987); *Shimman v. Frank*, 625 F.2d 80, 99 (6th Cir.1980). Evidence of such affirmative conduct is absent in this record.

## IV.

Having carefully reviewed the record, we conclude that the plaintiffs have not presented a triable issue as to the liability of Miller and the International. We do not find in this record sufficient allegations that the International played an affirmative role in the negotiating process such that it should bear responsibility for the unfair representation that allegedly occurred. Similarly, the plaintiffs have not stated specific facts creating a genuine dispute that the International or Miller impaired plaintiffs' rights to vote and express their views on the seniority issue.

Because we affirm the district court's grant of summary judgment on the ground that no triable dispute exists as to Miller's and the International's involvement, we need not reach the other two issues raised by the defendants—namely, whether Miller can be held liable individually for unfair representation and whether the plaintiffs' Title I claim is time-barred.[3]

The district court's grant of summary judgment is affirmed.

2. For example, Article VII, section 1(a) provides:

> [T]he subordinate bodies of the Brotherhood shall have autonomy in the conduct of their affairs, including organizing activities and the negotiation and administration of collective bargaining agreements where not done by the International Brotherhood itself or where the International Brotherhood is not a party to said collective bargaining agreement and engaging in economic activity to that end; and provided, further, that the International Brotherhood shall not be responsible for any actions, activities or omissions of any of its subordinate bodies or their representatives unless the same were authorized or directed by the International Brotherhood.

*Appendix* at 191.

3. Regarding the former, we note that the plaintiffs concede, as they must, that Miller may not be held liable for damages on account of actions taken by him on the union's behalf. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–49, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962); *Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989). The plaintiffs argue that this immunity principle applies only to actions for damages and that injunctive and declaratory relief can be awarded against individual union agents in section 301 suits. The plaintiffs have not cited any authority that has drawn that distinction and, in any event, it is unclear to this court what particular declaratory or injunctive relief could benefit the plaintiffs at this point in light of the facts that all five Moore Company plants have closed and the collective bargaining agreement involved here expired in 1982.